197 N.J. Super. 127 (1984)
484 A.2d 331
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID G. WILLIAMS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 1984.
Decided October 31, 1984.
*129 Before Judges PRESSLER, BRODY and HAVEY.
Joseph H. Rodriguez, Public Defender, attorney for appellant (Evan L. Goldman, Designated Counsel, of counsel and on the brief).
Alan A. Rockoff, Middlesex County Prosecutor, attorney for respondent (Vincent LeBlon, Assistant Middlesex County Prosecutor, on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
An unresolved question of pre-Criminal Code law was whether an outrageous assault producing relatively minor physical injuries constituted an "atrocious assault" under N.J.S.A. 2A:90-1. The Supreme Court was evenly divided on the question in the last case that considered it. State v. Crumedy, 76 N.J. 319 (1978). This appeal requires us to consider the same question in light of the Code definition of aggravated assault. N.J.S.A. 2C:12-1(b)(1). As is typical of cases presenting the problem, defendant's assaultive conduct was also sexually offensive.
*130 A jury found defendant guilty of committing aggravated sexual assault, N.J.S.A. 2C:14-2(a), and aggravated assault, N.J.S.A. 2C:12-1(b)(1), upon his 14-year-old daughter. The judge imposed consecutive prison terms: 20 years with 10 years parole ineligibility for the aggravated sexual assault and seven years with three and a half years parole ineligibility for the aggravated assault.
Defendant argues that the trial judge erroneously admitted his oral statement into evidence, erroneously failed to have the jury consider the lesser included offenses of sexual assault and simple assault, and imposed a sentence that is manifestly excessive.
The points outside our main concern need only brief treatment. After being arrested defendant was fully informed of his Miranda rights before giving an incriminating statement. He claims not to have realized the impact of the warnings because he was upset by the arrest, anxious over the welfare of his ailing father, and taken-in by the apparent solicitude of the interrogating officer. The trial judge found that defendant understood the warnings and that his will was not overborne. See State v. Miller, 76 N.J. 392, 404 (1978); State v. Powell, 98 N.J. 63 (1984). These findings are fully supported in the record and must therefore be accepted. State v. Johnson, 42 N.J. 146, 164 (1964).
Defendant's defense, rejected by the jury, was insanity. The evidence, including defendant's own testimony, established the aggravated sexual assault. There was no evidential basis for a conviction of the lesser included offense. Therefore the trial court properly refused to have the jury consider it. State v. Saulnier, 63 N.J. 199, 206-207 (1973).
The sentence for the aggravated sexual assault was the maximum that can be imposed. The findings and reasons given by the trial judge lead us to conclude that he properly followed the Code guidelines and strictures in imposing the sentence. State v. Roth, 95 N.J. 334 (1984); State v. Hodge, 95 N.J. 369 (1984). We must therefore defer to his discretion.
*131 A brief recital of the evidence supporting the State's case is necessary to develop the aggravated assault issue. Defendant and the victim's mother divorced when the girl was two years old. He did not see his daughter again for 10 years. During that period she lived with her mother in Pennsylvania. The estrangement ended when they met at a family gathering. For the next two years he tried to persuade the girl to live with him, his present wife and their five children. She finally agreed, became part of defendant's household for four months and then returned to her mother.
A few weeks after his daughter's arrival, defendant had sexual relations with her on several occasions. The sexual relations ceased within a short time. He then began an intermittent course of bodily assaults that continued until she left. These assaults were administered in a manner that was sexually humiliating and degrading. The girl was usually forced to disrobe. On the last occasion he handcuffed her. Defendant committed these assaults in an aura of distorted religious zealotry. He accused the girl of seducing him and claimed that the assaults were necessary to purge her of that sin. In one instance she was forced to hold a rosary while undergoing the ordeal. Despite the enormity of these outrages, the only permanent mark on the girl's body is a slight scar left by the handcuffs.
The indictment charges that defendant committed an aggravated assault as defined by N.J.S.A. 2C:12-1(b)(1) which reads:
A person is guilty of aggravated assault if he:
(1) Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury....
"Serious bodily injury" is defined in N.J.S.A. 2C:11-1(b) as:
... bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ....
"Bodily injury" is defined in N.J.S.A. 2C:11-1(a) as:
... physical pain, illness or any impairment of physical conditions....
*132 The definitions of "bodily injury" and "serious bodily injury" are taken from the Model Penal Code. The commentary to that Code notes that the definition of "bodily injury" excludes criminal liability for "wrongs based solely upon insult or emotional trauma." The definition of "serious bodily injury" encompasses the "drastic harms covered under the common-law felony of mayhem and adds a residual category of harm creating substantial risk of death."[1]Model Penal Code § 211.1 commentary at p. 188 (1980).
We hold that where there has been no substantial risk of death, a minor bodily injury cannot support a conviction for aggravated assault under N.J.S.A. 2C:12-1(b)(1) no matter how outrageous the attending circumstances.
Defendant characterized the assaults as "spankings." They were clearly more than that. There is no evidence, however, that he was attempting to or did in fact subject his victim to "a substantial risk of death" or to serious bodily injury. On the contrary, the evidence is that he was concerned not to cause the kind of serious bodily injury contemplated by the Code. The only physical scar is the barely perceptible mark on the girl's wrist. That is not a "serious, permanent disfigurement." Thus the State failed to prove the crime of aggravated assault; there was only sufficient evidence to convict defendant of the disorderly persons offense of simple assault.[2]
*133 The Code offers the State an ample array of crimes with which to charge a person who commits a simple assault that is sexually offensive. In the present case, for instance, defendant's "spankings" and the like would constitute third-degree aggravated criminal sexual contacts. N.J.S.A. 2C:14-3(a). Had the victim been less than 13 years old, they would have constituted second-degree sexual assaults. N.J.S.A. 2C:14-2(b). It is well to remember that in making "a clean break with the past," the Code defines crimes to match criminal conduct more precisely than did pre-Code law. See State v. Mirault, 92 N.J. 492, 496 (1983). It presents a complete and carefully structured system that fits punishments to the crimes committed.
Although the conviction for aggravated assault cannot stand, implicit in that verdict were findings that would support a conviction for simple assault. See State v. Lopez, 160 N.J. Super. 30, 39 (App.Div. 1978). We exercise our original jurisdiction, R. 2:10-5, to impose sentence for that disorderly persons offense.
The judgment of conviction for aggravated sexual assault is affirmed. The judgment of conviction for aggravated assault is reduced to a conviction for simple assault and defendant is sentenced to a term of six months in the Middlesex County Workhouse. The workhouse term shall run concurrently with and be satisfied by service of the term of imprisonment imposed for the aggravated sexual assault pursuant to N.J.S.A. 2C:44-5(a)(1).[3]
NOTES
[1] The definition of "severe personal injury" found in Chapter 14, "Sexual Offenses," is not taken from the Model Penal Code; it is defined as "severe bodily injury, disfigurement, disease, incapacitating mental anguish or chronic pain." N.J.S.A. 2C:14-1(f).
[2] The gap between a disorderly persons simple assault and a second degree aggravated assault was first created when the Legislature downgraded assault to a disorderly persons offense in 1951 so that such cases would be heard in the municipal court. N.J.S.A. 2A:170-26. See State v. Maier, 13 N.J. 235 (1953). Thereafter the Supreme Court expanded the definition of high misdemeanor atrocious assault, N.J.S.A. 2A:90-1, to include some outrageous assaults even though they produced only minor physical injuries. State v. Edwards, 28 N.J. 292 (1958). The reach of that expanded definition was the issue that evenly divided the Court in State v. Crumedy, 76 N.J. 319 (1978).
[3] This provision was repealed after the offenses herein were committed. L. 1983, c. 462, § 1.