STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TONY H. SLOANE, DEFENDANT–APPELLANT.

Argued March 15, 1988—Decided July 26, 1988.

*Rebecca R. Pressman,* Designated Counsel, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*J. Grall Robinson,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

The pivotal issue in this criminal appeal is whether the jury should have been permitted to consider whether the victim's stab wound was a "bodily injury," as defined under *N.J.S.A.* 2C:11–1a, in contrast to a "serious bodily injury," as defined under *N.J.S.A.* 2C:11–1b. Before us, the State conceded that under *N.J.S.A.* 2C:1–8d(3), if the stab wound could have been found to be a bodily injury, then the Code would permit a jury charge on the third-degree aggravated assault offense of purposely or knowingly causing bodily injury with a deadly weapon, *N.J.S.A.* 2C:12–1b(2), along with the second-degree aggravated assault offense of causing serious bodily injury to another, *N.J.S.A.* 2C:12–1b(1). In the State's view, the third-degree offense can be considered as a lesser-included offense under *N.J.S.A.* 2C:1–8d(3) because it differs from the second-degree offense only with respect to the (lesser) degree of injury required. The Code is indifferent to the presence or absence of a deadly weapon as an element of the second-degree offense. *N.J.S.A.* 2C:12–1b(1).

We find that the resolution of the degree of injury was at least rationally debatable and therefore presented a jury question requiring submission of the third-degree aggravated assault charge to the jury. This conclusion requires a reversal of the judgment below that in effect took the issue away from the jury.

I

The case arises from two brief confrontations between defendant and his friend Clyde Jones on the evening of June 17,

1982. Defendant was leaving a restaurant in Trenton when he noticed Jones getting out of a car. (The driver of the car had been seeing defendant's former girlfriend.) Defendant claims that the ensuing argument erupted after he refused to provide an intoxicated Jones with marijuana and money; however, Jones asserts that as soon as he stepped out of the car, defendant began arguing with him. As the argument escalated, Jones recalled, defendant put his right hand in his jacket pocket. Jones then broke two beer bottles. He testified that he intended to use them for defense against Sloane, who wanted to fight but was larger and heavier than Jones and also possibly armed. Defendant claimed at trial that Jones had attempted to rob him by threatening him with the jagged bottlenecks. Defendant had left the scene unharmed, allegedly because someone else had distracted Jones; Jones and a witness, Pickett, asserted that Jones had merely thrown the bottlenecks into the bushes and allowed defendant to leave.

Several minutes later, defendant and a companion returned to the scene. On this occasion defendant and Jones clashed physically. Defendant relates that Jones ambushed him with a crowbar, and that Jones was subsequently handed a knife by a bystander. When arrested defendant told the police that he had taken the knife from Jones and stabbed Jones with it; however, at trial defendant asserted that during the struggle Jones had continuously held the knife. However, Jones and Pickett insist that defendant and his companion appeared with their hands in their pockets, that both then circled Jones, and that defendant attacked Jones with a knife as Jones was holding a lug wrench with which to protect himself.

Jones was stabbed first through the arm and then in the back; he ran away across a freeway but fainted and was subsequently picked up by an ambulance and taken to the hospital. Police soon arrived at the scene and questioned defendant, but released him when they could not find a stabbing victim nearby. After Jones was found later that night, he

and Pickett implicated defendant. On June 23, 1982, defendant surrendered to the police.

The grand jury indicted defendant for second-degree aggravated assault (purposely or knowingly causing serious bodily injury to another) under *N.J.S.A.* 2C:12–1b(1), and for possession of a weapon for an unlawful purpose under *N.J.S.A.* 2C:39–4d. The trial court declined to charge the jury on any assault offense other than that of causing serious bodily injury to another. On the assault count the jury thus had to choose between acquitting defendant or finding him guilty of second-degree aggravated assault. The jury convicted the defendant of the degree of assault charged but not of possession of a weapon for an unlawful purpose against the person of another. The Appellate Division affirmed the conviction. *State v. Sloane,* 217 *N.J.Super.* 417, 421 (1987). We granted certification, 108 *N.J.* 669 (1987).

## II

Assault is one of the oldest common-law crimes. Now codified, it involves inchoate and choate aspects. The Legislature has carefully delineated the multiple aspects of this generic crime: the 1979 revisions of the Code of Criminal Justice placed all of the criminal assaults under a single section of the Code's Chapter 12. In *State v. Williams,* 197 *N.J.Super.* 127 (App.Div.1984), *certif. denied,* 99 *N.J.* 233 (1985), Judge Brody explained the significance of the Code's gradations of injury, intent, and instrument: he noted that the Code, "in making 'a clean break with the past,' * * * defines crimes to match criminal conduct more precisely than did pre-Code law. It presents a complete and carefully structured system that fits punishments to the crimes committed." 197 *N.J.Super.* at 133 (citation omitted). In the case of assault this grading reflects three factors: (1) the degree of injury inflicted or attempted to

be inflicted on the victim; (2) the nature of the force, i.e., whether a firearm or other deadly weapon was used; and (3) the mental state of the actor.

Set forth in an appendix is the language of *N.J.S.A.* 2C:12–1, the Code's section on assaults. For ease of analysis, in another appendix we shall reshuffle the typology of the Code to illustrate, in descending order of gravity, the kinds of conduct covered by completed assaults and the corresponding penalties to be assessed for violations.

We can see that under the Code's structure a jury will employ an amalgam of factors to weigh the actor's responsibility for an assault. In this case we can rule out the firearm offense and the inchoate offenses involving threats, although in some cases they might be relevant to a charge. Since we have a deadly weapon involved, the degree of culpability based on the mental state of the actor could range over:

Second Degree
 serious bodily injury that was knowing
 or purposeful

Third Degree
 bodily injury that was knowing with a deadly
 or purposeful weapon

Fourth Degree
 bodily injury that was reckless with a deadly
 weapon

Disorderly person
 offense involving:
 bodily injury purposeful, knowing
 or reckless

 bodily injury that was negligent with a deadly
 weapon

As noted at the outset, the trial court was of the view that the only degree of injury that was involved here was "serious bodily injury." Hence, the only charge that the court put to the jury was to decide the defendant's guilt or innocence; this determination would depend on whether the jury accepted

Sloane's claim that the victim's wound had either been inflicted by Sloane in self-defense or else had been self-inflicted by the victim during the struggle. The court also refused to charge any form of reckless assault. We believe that this was too tight a fit for the facts, given the legislative grid of criminal culpability, which depends on a jury determination of various elements of the offense. The legislative definition of "serious bodily injury" requires a jury finding of "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *N.J.S.A.* 2C:11–1b. "Th[is] definition of 'serious bodily injury' encompasses the 'drastic harms covered under the common-law felony of mayhem and adds a residual category of harm creating substantial risk of death.'" *State v. Williams, supra,* 197 *N.J.Super.* at 132 (quoting *Model Penal Code* § 211.1 commentary at 188 (1980) (footnote omitted)).

The testimony at trial contains no reference to a "protracted loss or impairment of the function of any bodily member or organ" or to a "creation of a substantial risk of death." *N.J.S.A.* 2C:11–1b. With respect to disfigurement, the victim testified and exhibited his injured arm to the jury. The hospital records described the wounds clinically but not in terms of the Code-definitions. In its summation the State noted that "Clyde Jones got stabbed badly in his left arm through the bicep, front and back and into the forearm * * *."

Quite obviously, under the Code's definition of "serious bodily injury" not every stabbing will result in such injury. Had the victim suffered only a minor cut, we would not doubt that even though a deadly weapon was used, it had not *necessarily* inflicted a serious bodily injury. We might very well conclude, as did the jurors in this case, that the wound caused serious harm to the victim. But we might also consider, as the Code requires us to, whether the wound was one that did not create a substantial risk of death and did not result in permanent disfigurement or protracted impairment. In sum, we cannot

say as a matter of law that the jury's function in this regard can be displaced in this case. *See State v. Ingenito,* 87 *N.J.* 204, 211 (1981) (jury alone determines the facts). We can well agree that if the victim had lost an arm or an eye, it would be wrong to submit the case to the jury with the lesser-included offense of bodily injury. On these facts, a verdict of guilt on the lesser offense might reflect a compromise (i.e., an agreement despite juror doubts) by a jury unable to resolve the question of greater criminal culpability. *State v. Christener,* 71 *N.J.* 55 (1976). Particularly would this be so when a defendant objected to such a charge. But where, as here, defendant requests a charge on an offense indicated by the proofs, the charge should be given. Otherwise, a jury reluctant to acquit defendant might compromise on a verdict of guilt on the greater offense. "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble v. United States,* 412 *U.S.* 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 *L.Ed.*2d 844, 850 (1973).

### III

In general, when a lesser-included offense charge is requested by a defendant, the trial court is obligated, in view of the defendant's interest, to examine the record thoroughly to determine if there is a rational basis in the evidence for finding that the defendant was not guilty of the higher offense charged but that the defendant was guilty of a lesser-included offense. *State v. Crisantos,* 102 *N.J.* 265, 278 (1986). The lesser-included offense doctrine is in some respects an aspect of the "same offense" doctrine that we use for purposes of double jeopardy analysis. In *State v. DeLuca,* 108 *N.J.* 98, 109, *cert. denied,* —— U.S. ——, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987), we noted that *Illinois v. Vitale,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980), had modified the *Blockburger* test of elements of the offense "to make less abstract the comparison of the elements of the two offenses." We believe that similar reasoning should in-

form our understanding of the definitions of a lesser-included offense in our Code of Criminal Justice. The Code provides generally that a defendant in a criminal case is entitled to a charge on a lesser-included offense when that offense

(1) * * * is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) * * * consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3) * * * differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission. [*N.J.S.A.* 2C:1–8d.]

Although this useful definition, drawn from *Model Penal Code* ¶ 1.07(4), has found general acceptance, *Fuller v. United States*, 407 *F.*2d 1199, 1227–28 (D.C.Cir.1968), *cert. denied*, 393 *U.S.* 1120, 89 *S.Ct.* 999, 22 *L.Ed.*2d 125 (1969), it is not all-encompassing. As the Attorney General's brief points out, these three statutory categories of lesser-included offenses, *N.J.S.A.* 2C:1–8d(1) to (3), are not water-tight compartments. Thus, for example, none of the categories would literally indicate that passion-provocation manslaughter is a lesser-included offense of murder; this is because both offenses require the same mental state (knowledge and purpose) and the same degree of injury (death). Yet when there is a rational basis in the evidence, a passion-provocation manslaughter charge may appropriately be considered as a lesser-included offense of murder. Therefore, the relative culpability of the actor can be mitigated by the presence of other evidentiary factors, in which event the lesser-included offense should be submitted to the jury. Such a holding comports with our general view that subject to fair notice the jury should resolve the degree of an actor's guilt on the basis of the evidence presented to the jury. *See State v. LeFurge*, 101 *N.J.* 404 (1986) (conspiracy to commit theft, though not included explicitly in group indictment for theft, is a valid lesser-included offense); *State v. Talley*, 94 *N.J.* 385, 392 (1983) (defendant may be found guilty of a lesser

offense included in the greater offense charged in the indictment).

In this case, the Attorney General takes the position that the third-degree offense of causing "bodily injury," *N.J.S.A.* 2C:12–1b(2), which requires the additional element of a deadly weapon, cannot be charged under *N.J.S.A.* 2C:1–8d(1) as a lesser-included offense of the second-degree offense of causing "serious bodily injury," *N.J.S.A.* 2C:12–1b(1), which contains no such element. He thus agrees with the result but not the reasoning of the recent Appellate Division decision that under *N.J.S.A.* 2C:1–8d(1) assault with a deadly weapon is a lesser-included offense to any assault offense for which the Code does not specify a deadly weapon as an element, since "the Legislature intended that the [greater] crime is committed regardless of whether a deadly weapon is used." *State v. Graham*, 223 *N.J.Super.* 571, 576 (1988). Noting that *N.J.S.A.* 2C:1–8d(1) focuses on "facts" and not "elements" of offenses, the *Graham* court disapproved opinions holding that an assault offense for which a deadly weapon was not an element could not include offenses requiring a deadly weapon. *Ibid.*

However, the Attorney General argues, and we agree, that the structure of the Code certainly permits the inclusion of the third-degree offense under the theory that that offense differs from the second-degree offense "only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." *N.J.S.A.* 2C:1–8d(3). (As noted, "serious bodily injury" is required to establish second degree assault; "bodily injury" with a deadly weapon will establish the third degree offense.)

The Commentary to the Model Penal Code (from which our lesser-included offense doctrine is drawn) recognizes that in some instances an offense that differs by lesser degree of injury may require proof of an element that "may not be necessary to establish the greater [offense]." *Model Penal*

*Code,* commentary at 133 (1980). The MPC Commentary concludes, however, that "a basic premise of the Code is that it is desirable, whenever possible, to adjudicate the entire criminal liability of the defendant in a single trial * * *." *Ibid.*

New Jersey has followed this format in its common law. *See State v. Zelichowski,* 52 *N.J.* 377, 383 (1968) (atrocious assault and battery is a valid lesser-included offense to murder though "violent physical attack" is not a necessary element of murder). And finally, with regard to the Code requirement that the two offenses, if equal in culpability, differ *only* "in the respect that a less serious injury or risk of injury" is involved in the lesser-included offense, *N.J.S.A.* 2C:1–8d(3), it may be useful to recall that, as noted at the outset, the lesser-included-offense doctrine is one aspect of our law of double jeopardy. If we examine the problem in that context, would we ever hold that a defendant acquitted of second-degree assault on facts like these could be retried for third-degree assault because the offenses contained different elements? We think not: would not "the [same] evidence * * * used to [seek to] establish guilt in the first prosecution [be] identical to that that [would] be used in the second prosecution"? *State v. DeLuca, supra,* 108 *N.J.* at 107.

Whether the lesser-included offense is described in terms of "proof of the same or less than all the facts required to establish the commission" of the greater offense, *N.J.S.A.* 2C:1–8d(1), or as involving "a less serious injury" or "lesser kind of culpability" than the greater offense, *N.J.S.A.* 2C:1–8d(3), neither theory is an invitation for the court to scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty. The prosecutor has the primary charging responsibility, and the role of the court, within constitutional limitations, is to implement the statutory pattern of the Code for charging and prosecuting criminal offenses. We believe that the statutory framework can well accommodate constitutional requirements with the necessary flexibility that the Code contemplates.

In sum, then, just as "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor [, so has a] parallel rule * * * been applied in the context of a lesser included offense instruction * * *." *Mathews v. United States,* 485 *U.S.* ——, ——, 108 *S.Ct.* 883, 887, 99 *L.Ed.*2d 54, 61 (Rehnquist, C.J.) (1988). Our Code of Criminal Justice provides the statutory framework of defendant's entitlement to have a jury consider such lesser-included offenses before returning a verdict. *See State v. Powell,* 84 *N.J.* 305 (1980) (trial court must submit passion-provocation charge to jury on defendant's request, even when defendant's position at trial was inconsistent with manslaughter verdict).

Of course, defendant can in some situations tacitly elect not to have a lesser-included offense charged. For example, "[t]he trial court does not * * * have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a [lesser] charge. It is only when the facts 'clearly indicate' the appropriateness of that charge that the duty of the trial court arises." *State v. Choice,* 98 *N.J.* 295, 299 (1985) (citation omitted). Indeed, there will be some cases in which it would be unfair to try a defendant for a crime for which he was not indicted.

But the defendant here was charged with the highest degree of assault in the Code. He was on notice, and indeed it was to his advantage, that the jury be permitted to consider the lesser-included offenses of assault that require a lesser degree of injury.[1] Sloane knew, because of the second count of the

---

[1]For example, a defendant charged with assault with a firearm may invite a jury charge on the lesser-included fourth-degree offense of knowingly and recklessly pointing a firearm in the direction of another, *N.J.S.A.* 2C:12–1b(4); this offense does not require any showing of injury to the victim, but may result in the imposition of a minimum term under the Graves Act, *N.J.S.A.* 2C:43–6c.

indictment, that a deadly weapon was involved in the charges. He did not object to the charge here; indeed, he requested the charge. Thus, he can be assumed to have been aware that the jury was able to enter a verdict of guilt on any of the appropriate lesser-included offenses. The jury should have been given that opportunity.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI, O'HERN and STEIN—7.

*For affirmance*—None.

## APPENDIX A

CHAPTER 12. ASSAULT; RECKLESS ENDANGERING; THREATS

2C:12-1. Assault

a. Simple assault. A person is guilty of assault if he:

(1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or

(2) Negligently causes bodily injury to another with a deadly weapon; or

(3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

Simple assault is a disorderly persons offense unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty disorderly persons offense.

b. Aggravated assault. A person is guilty of aggravated assault if he:

(1) Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circum-

stances manifesting extreme indifference to the value of human life recklessly causes such injury; or

(2) Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon; or

(3) Recklessly causes bodily injury to another with a deadly weapon; or

(4) Knowingly under circumstances manifesting extreme indifference to the value of human life points a firearm, as defined in section 2C:39–1f., at or in the direction of another, whether or not the actor believes it to be loaded; or

(5) Commits a simple assault as defined in subsection a.(1) and (2) of this section upon

(a) Any law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority; or

(b) Any paid or volunteer fireman acting in the performance of his duties while in uniform or otherwise clearly identifiable as being engaged in the performance of the duties of a fireman; or

(c) Any person engaged in emergency first-aid or medical services acting in the performance of his duties while in uniform or otherwise clearly identifiable as being engaged in the performance of emergency first-aid or medical services; or

(d) Any school board member or school administrator, teacher or other employee of a school board while clearly identifiable as being engaged in the performance of his duties or because of his status as a member or employee of a school board.

Aggravated assault under subsection b.(1) is a crime of the second degree; under subsection b.(2) is a crime of the third degree; under subsection b.(3) and b.(4) is a crime of the fourth degree; and under subsection b.(5) is a crime of the third degree if the victim suffers bodily injury, otherwise it is a crime of the fourth degree.

c. A person is guilty of assault by auto when the person drives a vehicle recklessly and causes either serious bodily injury or bodily injury to another. Assault by auto is a crime of the fourth degree if serious bodily injury results and is a disorderly persons offense if bodily injury results.

d. A person who is employed by a facility as defined in section 2 of P.L.1977, c. 239 (C. 52:27G–2) who commits a simple assault as defined in paragraph (1) or (2) of subsection a. of this section upon an institutionalized elderly person as defined in section 2 of P.L.1977, c. 239 (C. 52:27G–2) is guilty of a crime of the fourth degree.

### APPENDIX B

For convenience, we have omitted offenses involving attempts. Classification of these offenses by attempts presents additional considerations. See State v. McAllister, 211 N.J.Super. 355 (App. Div. 1986). [This chart is illustrative of the gradation of each crime but is not intended to affect the substantive standards for the elements of each offense.]

SECOND DEGREE OFFENSES (5–10 years) N.J.S.A. 2C:12–1b(1)

| Degree of Injury | State of Mind | Attendant Circumstances |
|---|---|---|
| • serious bodily injury | purposeful or knowing or with extreme indifference | none required |

THIRD DEGREE OFFENSES (3–5 years) N.J.S.A. 2C:12–1b(2), (5)

| Degree of Injury | State of Mind | Attendant Circumstances |
|---|---|---|
| • bodily injury | purposeful or knowing | with a deadly weapon |
| • bodily injury | purposeful, knowing or reckless | to certain public officials |
| • bodily injury | negligent | with a deadly weapon, to certain public officials |

FOURTH DEGREE OFFENSES (1–3 years) * N.J.S.A. 2C:12–1b(3), (4), (5)

| Degree of Injury | State of Mind | Attendant Circumstances |
|---|---|---|
| • bodily injury | reckless | with a deadly weapon |
| • threatened bodily injury by pointing of gun | knowing and with extreme indifference | with a firearm |

N.J.S.A. 2C:12–1c

| | | |
|---|---|---|
| • serious bodily injury | reckless | with a vehicle |

| DISORDERLY PERSON OFFENSES | | N.J.S.A. 2C:12–1a |
| --- | --- | --- |
| Degree of Injury | State of Mind | Attendant Circumstances |
| ● bodily injury | purposeful, knowing or reckless | none required ** |
| ● bodily injury | negligent | with a deadly weapon ** |
| | | N.J.S.A. 2C:12–1c |
| ● bodily injury | reckless | with a vehicle |

\*
An employee of an institution for the elderly is guilty of fourth degree assault if he attempts to cause or purposely, knowingly, or recklessly causes bodily injury to an institutionalized elderly person or if he negligently causes bodily injury with a deadly weapon to such a person. N.J.S.A. 2C:12–1d.
\*\*
In the case of a fight or scuffle entered into by mutual consent, this is a petty disorderly persons offense.