586 A.2d 850

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. HOOVER J. TURNER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 14, 1991—Decided February 11, 1991.

Before Judges J.H. COLEMAN and ASHBEY.

*Wilfred Caraballo,* Public Defender, attorney for appellant (*Steven M. Gilson,* Designated Counsel, of counsel and on the brief).

*John Kaye,* Monmouth County Prosecutor, attorney for respondent (*Mark P. Stalford,* Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

J.H. COLEMAN, P.J.A.D.

Defendant was tried before a jury on charges of attempted murder, contrary to *N.J.S.A.* 2C:11–3 and *N.J.S.A.* 2C:5–1 (count one); second-degree robbery, contrary to *N.J.S.A.* 2C:15–1 (count two); second-degree aggravated assault, contrary to *N.J.S.A.* 2C:12–1b(1) (count three); third-degree possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4d (count four); and fourth degree aggravated assault, contrary to *N.J.S.A.* 2C:12–1b(3) (count five). He was tried before a separate jury for fourth-degree possession of a weapon by a convicted felon, contrary to *N.J.S.A.* 2C:39–7 (count six). He was found guilty on counts three, four and five and acquitted on the other three counts.

Defendant was sentenced on March 14, 1989 to an extended term of 20 years with 10 years of parole ineligibility on the aggravated assault. He was sentenced to concurrent custodial terms on counts four and five. This appeal followed.

On this appeal, defendant contends that:

I DEFENDANT'S SECOND–DEGREE AGGRAVATED ASSAULT CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT DID NOT CHARGE THE JURY AS TO THE LESSER INCLUDED OFFENSE OF THIRD–DEGREE AGGRAVATED ASSAULT. (NOT RAISED BELOW).

II DEFENDANT'S MATTER MUST BE REMANDED SO AS TO DETERMINE WHETHER THE PETIT JURY ARRAY WAS CONSTITUTED PURSUANT TO FEDERAL AND CONSTITUTIONAL REQUIREMENTS; IF THE ARRAY WAS NOT CONSTITUTED PROPERLY, DEFENDANT'S CONVICTIONS MUST BE REVERSED.

III THE SENTENCING COURT ERRED BY IMPOSING AN EXTENDED TERM OF 20 YEARS WITH A MINIMUM PAROLE INELIGIBILITY TERM OF 10 YEARS AS TO THE SECOND–DEGREE AGGRAVATED ASSAULT CONVICTION.

A. The sentencing court erred by imposing an extended term.

B. The sentencing court erred by imposing a parole ineligibility term.

The pertinent facts are pretty straight forward. On May 5, 1988, Hoover J. Turner, also known as "Slim," was employed by the Monmouth Park Track as a caretaker for the horses. Defendant accused a coworker, Edwin Simonds, of short changing him $20 when making change for a $50 bill. When Simonds denied the allegation, defendant threatened to kill Simonds. The dispute occurred in the recreation hall and Simonds shoved a pool stick at defendant without touching him. Both men left the recreation hall only to meet again in a violent clash.

A few minutes later, defendant and Simonds met outside and defendant told Simonds, "I'll make you give me my money." Defendant slashed Simonds' throat, with an unidentified sharp instrument, from the ear across the trachea. The police and an ambulance were summoned to the scene. Simonds was taken to a hospital and defendant was taken to jail.

Defendant argues that his second-degree aggravated assault conviction should be reversed under the plain error rule because the trial judge failed to *sua sponte* instruct the jury on the lesser included offense of third-degree aggravated assault. This argument is based on the assertion that under the evidence the jury should have been required to decide whether Simonds received "serious bodily injuries" or simply "bodily injuries." *See N.J.S.A.* 2C:11–1a and b. Under the former, the offense is graded as second-degree while under the latter, the offense is graded as third-degree. *See N.J.S.A.* 2C:12–1b(1) and (2).

The jury was instructed that under the second-degree aggravated assault charge, the State had to prove that defendant caused serious bodily injury to the victim and that defendant acted "purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." The court further instructed the jury that serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ...." This definition was taken verbatim

from *N.J.S.A.* 2C:11–1b. Consequently, it has not been suggested that the court's charge was not accurate.

Nevertheless, *State v. Choice,* 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985), instructs that when the facts clearly indicate the appropriateness of instructing the jury on a lesser included offense, the judge is obligated to give such an instruction. *See also State v. Powell,* 84 *N.J.* 305, 419 *A.*2d 406 (1980). Where the required instruction is not given, the harmless error rule may not be invoked because a jury reluctant to acquit, might compromise on a verdict of guilt because defendant is obviously guilty of some offense. *State v. Sloane,* 111 *N.J.* 293, 299, 544 *A.*2d 826 (1988).

Defendant contends that there was no testimony proving that the injury inflicted created a substantial risk of death or serious, permanent disfigurement or protracted loss or impairment of a body part or body function. We disagree.

The victim testified that he was bleeding profusely before he returned to the recreation hall and applied "direct pressure to the wound and asked for an ambulance," which took him to the emergency room of the Monmouth County Medical Center. Other witnesses confirmed that the victim lost a lot of blood. The paramedic who responded in the ambulance testified that the laceration on the victim's throat was at least one-half inch deep, extending from just below the tip of the victim's ear up to the trachea. After being placed into the ambulance, the victim was placed on nasal oxygen, and he was given normal saline solution intravenously. Direct pressure was maintained on the wound all the way to the hospital as it continued to bleed. The victim was transported by ambulance to the hospital emergency room where a nurse, doctor and a surgeon provided care for him. The laceration was sutured and the victim was retained in the intensive care unit of the hospital overnight.

Our careful study of the record persuades us to conclude that the evidence does not clearly indicate that the judge should have, on his own motion, submitted to the jury a lesser included

offense of third-degree aggravated assault pursuant to *N.J.S.A.* 2C:12–1b(2). The laceration of the victim's throat described by the paramedic and visualized by us on the color photographs placed into evidence, unquestionably subjected the victim "to a substantial risk of death." *See State v. Williams,* 197 *N.J.Super.* 127, 132, 484 *A.*2d 331 (App.Div.1984), cited with approval in *State v. Sloane, supra,* 111 *N.J.* at 298, 544 *A.*2d 826. Although the elements of the offenses are different, we perceive no reason why the risk of death for second-degree aggravated assault should be greater than that required for aggravated manslaughter. For reckless manslaughter, the risk of death need only be "possible" and for aggravated manslaughter, the risk must be a "probability" of death. *State v. Curtis,* 195 *N.J.Super.* 354, 365–366, 479 *A.*2d 425 (App.Div.), *certif. den.* 99 *N.J.* 212, 491 *A.*2d 708 (1984).

Here, the evidence was that the victim was bleeding from the laceration much like a pig in a slaughterhouse after its throat has been slit. Photographs taken shortly after the victim was released from the hospital depict an extensive laceration. The bleeding continued even after the paramedics rendered emergency care. Clearly, there existed the probability that the victim could easily have bled to death based on the nature and the extent of the injury. *Sloane* recognizes there are some injuries that are inherently so serious that the jury need not be given the option of finding a lesser offense based on the severity of the injury. *Id.* 111 *N.J.* at 299, 544 *A.*2d 826. This is such a case. *See also State v. Johnson,* 216 *N.J.Super.* 588, 597, 524 *A.*2d 826 (App.Div.1987), where defendant was convicted of second-degree aggravated assault for shooting the victim in the kneecap.

Beyond that, we are satisfied that a determination of whether the victim was subjected to a substantial risk of death requires the primary focus to be upon the nature and extent of the injury rather than on the effectiveness of medical treatment, unless of course, the quality of care becomes a substan-

tial intervening cause of harm. Consequently, the fact that the ambulance took longer to get back to the hospital than it took to get to the scene of the crime is not probative of whether the one-half inch deep laceration of the throat with profuse bleeding subjected the victim to a substantial risk of death. The reason for the additional time was not explained, and the judge was not required to speculate about the reason.

■ Defendant further complains that a reversal is required because he was not permitted to challenge the jury array. *R.* 1:8–3(b) directs that a challenge to the jury array must be made and decided "before any individual juror is examined...." Here, the record does not indicate that defendant sought to challenge the array before any individual juror was examined. Hence, the application was untimely. But the rule contains an exception that permits the challenge to be made out of time for good cause shown. No good cause was shown because defendant did not demonstrate that blacks were improperly excluded from the array. Hence, the contention lacks merit.

■ Finally, defendant contends that the sentence was excessive. We are entirely satisfied that the discretionary extended sentence complies with the sentencing guidelines. *State v. Jefimowicz,* 119 *N.J.* 152, 162, 574 *A.*2d 428 (1990); *State v. Dunbar,* 108 *N.J.* 80, 89, 527 *A.*2d 1346 (1987). The record supports a finding that there were at least four aggravating factors: *N.J.S.A.* 2C:44–1a, (2), (3), (6) and (9). There were no mitigating factors. His past criminal record was extensive, and it included a 1981 second-degree murder conviction in Florida. Given our limited standard of review, the sentence does not represent an abuse of discretion. *State v. Gardner,* 113 *N.J.* 510, 516, 551 *A.*2d 981 (1989). We should not therefore substitute our judgment for that of the trial judge. *State v. Jabbour,* 118 *N.J.* 1, 5–6, 570 *A.*2d 391 (1990).

The judgment of conviction is affirmed.