622 A.2d 1306
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. TRACY MINGO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 27, 1992—Decided July 2, 1992.

Before Judges PRESSLER, SHEBELL and D'ANNUNZIO.

*Wilfredo Caraballo,* Public Defender, attorney for appellant (*Stephen W. Kirsch,* Assistant Deputy Public Defender, of counsel and on the brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent (*Robin Parker,* Deputy Attorney General, of counsel and on the letter brief).

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree aggravated assault in violation of *N.J.S.A.* 2C:12–1b(1) (count eight); second-degree possession of a weapon, a handgun, with a purpose to use it unlawfully in violation of *N.J.S.A.* 2C:39–4a (count three); and possession of a handgun without a permit in violation of *N.J.S.A.* 2C:39–5b (count one). The court sentenced defendant to ten years imprisonment with five years of parole ineligibility for the aggravated assault and to a consecutive ten-year term of imprisonment with three years of parole ineligibility for possession of a handgun with an unlawful purpose. The court imposed a five-year term for possession of a handgun without a permit, to be served concurrently with

the aggravated assault count. Defendant's aggregate sentence is 20 years imprisonment with eight years of parole ineligibility.

The State's proofs, if believed by the jury, established the following facts.

On the evening of December 26, 1989 Dierdre Brock and four of her friends, Theresa McFadgen, Tina McFadgen, Conrad Lane and Terry Cooper, went to Absecon, New Jersey, to attend a high school basketball tournament at Holy Spirit High School. Brock sat in the bleachers with Theresa and Tina McFadgen. During the first half of the game Brock noticed people arguing in the stands across the court. After the teams left the court at half-time, Brock observed someone being thrown off the bleachers. A crowd congregated on the basketball court, arguing and pushing each other around. According to Brock, people were swinging fists and hitting each other. The fighting stemmed from a rivalry between gangs in two housing projects in Atlantic City. Brock noticed that her brother was involved in the argument, so she left the bleachers and went down on the court.

After unsuccessfully trying to get her brother to leave the gym, Brock headed out the door of the gym accompanied by the McFadgens. As soon as she exited the side door, Brock saw defendant holding a gun down by his side. Brock had known defendant for over ten years because they both went to school in Atlantic City. The McFadgens and Brock asked defendant what was wrong and why he was carrying what was described as a "big silver gun." However, defendant did not respond. Brock described him as looking "very upset" and "mean;" "I never seen him look like that." Brock then started to run away from defendant because she was scared. After about 15 or 20 steps Brock heard a shot. Brock turned to determine its source and saw defendant pointing a gun in her direction. Brock then turned around and continued running. About three seconds later, Brock heard a second shot and felt pain in her leg. She looked down and noticed smoke coming out of her leg and a big

hole in her pants. Brock continued to run about 20 steps before being assisted by the others. While she was running Brock heard a third shot.

A few minutes later the police arrived. Brock told Sergeant William Sommers of the Absecon Police Department that defendant did the shooting, and an ambulance took her to a hospital where she spent five days recuperating.

Dr. Francis Previti, who attended to Brock at the hospital, testified that Brock suffered what is called a "through and through" gunshot wound, meaning that the bullet had passed through her leg. The bullet entered the lateral thigh of her left leg and exited just above the kneecap. Dr. Previti described the entry wound as half an inch. According to Dr. Previti, a gunshot wound in that part of the leg threatens one of the body's major arteries.

The State introduced the testimony of witnesses in addition to the victim and other circumstantial evidence tending to corroborate its version of the incident and defendant's culpability.

Defendant testified, admitting his presence at the scene but denying that he shot Brock or that he had possessed a firearm at the scene. Defendant also presented witnesses whose testimony corroborated his version.

On appeal defendant contends, among the other issues he raises, that the trial court erred in failing to instruct the jury that it could find him guilty of a third-degree aggravated assault pursuant to *N.J.S.A.* 2C:12–1b(2) as a lesser included offense of the second-degree aggravated assault with which he was charged under *N.J.S.A.* 2C:12–1b(1). We agree that defendant was entitled to that instruction even though he did not request it and that the failure to have accorded it to him was reversible error.

The primary distinction between the second and third degree aggravated assault crimes is the nature of the bodily injury actually inflicted or attempted to be inflicted. Thus, the ele-

ments of the b(1) crime are met if the defendant "[a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury...." The elements of the b(2) crime are met if the defendant "[a]ttempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon...." Based on proofs of injury caused by a deadly weapon, the critical distinction between the b(1) crime and b(2) crime is whether the injury is a serious bodily injury as defined by *N.J.S.A.* 2C:11–1b or a bodily injury as defined by 2C:11–1a.[1] *See State v. Sloane,* 111 *N.J.* 293, 544 *A.*2d 826 (1988).

*N.J.S.A.* 2C:11–1a defines bodily injury as "physical pain, illness or any impairment of physical condition...." *N.J.S.A.* 2C:11–1b defines serious bodily injury as bodily injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ...." The injury here was a "through and through" bullet wound of the leg which entailed surgical repair, a scar of indeterminate size and a five-day hospital stay. There was no proof of any impairment of function. There was no proof of the extent of the cosmetic injury, if any, resultant from the scar. In this posture, we are satisfied that the injury was much like that suffered by the victim in *Sloane,* who was "stabbed badly in his left arm through the bicep, front and back and into the forearm...." *Sloane, supra,* 111 *N.J.* at 298, 544 *A.*2d 826. That injury, the Supreme Court held, presented an "at least rationally debata-

---

1 We do not here consider the pertinence of the fourth-degree offense defined by *N.J.S.A.* 2C:12–1b(3), namely bodily injury recklessly caused with a deadly weapon. Defendant does not urge on this appeal that he was entitled to an instruction on that offense. We assume that this is so because the record does not clearly support a factual finding that his conduct was reckless rather than knowing or purposeful. In the absence of a request for such an instruction, we are persuaded that no such instruction was required.

ble" question requiring jury resolution. *Id.* at 294, 544 *A.*2d 826. So here.

We recognize the disparate standard which depends upon whether or not defendant has requested the lesser included charge. If he does, he is entitled to it if there is in the evidence "a rational basis for a verdict convicting the defendant of the included offense." *N.J.S.A.* 2C:1–8e. If he does not, the court is not required to seek that rational basis by itself meticulously sifting through the evidence, and defendant will hence be entitled to the instruction only if the proofs clearly indicate its appropriateness. *State v. Sloane, supra,* 111 *N.J.* at 303, 544 *A.*2d 826; *State v. Choice,* 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985).

In our view the unfortunate injury sustained by the victim here clearly raised a jury issue respecting its qualification for the bodily injury definition. As we understand the *Sloane* paradigm, the lesser included charge was consequently required.

We appreciate the view of our dissenting colleague, which, as we understand it, is predicated on the assumption that if one shoots at another with a handgun, he must certainly be at least attempting to cause serious bodily injury. We conclude, however, that such an assumption does not always fit the facts of each case. We do not believe it necessarily fits here.

This was not a shooting with a sawed-off shot gun at point blank range into another person's abdomen. *See State v. Rose,* 112 *N.J.* 454, 484, 548 *A.*2d 1058 (1988). Here, there was no direct proof of the distance between defendant and the victim when the shot was fired. We do know, however, from her testimony, that she had run fifteen or twenty steps from defendant before she heard the first shot and had continued running for at least several seconds more before she heard the second shot, the one which injured her. There was no proof that defendant was aiming at her particularly. Nor was there any proof of motive for his wanting to harm her in particular. Under these circumstances, we view the question of whether

defendant was attempting to inflict injury upon the victim as a clearly debatable one as well.

We are hence satisfied that defendant's conviction of second-degree aggravated assault as charged in count eight of the indictment must be reversed. Since, however, we are satisfied that no other error infected the judgment of conviction, we afford the State the option of accepting a conviction of third-degree aggravated assault in lieu of retrying count eight of the indictment. Moreover, it is clear that the convictions on the other crimes of which the jury found him guilty, namely the two weapons offenses and the three fourth-degree aggravated assaults, are unaffected by the error infecting count eight.

We are also satisfied that defendant's remaining contentions are all without merit. *R.* 2:11–3(e)(2). He raises the following additional issues:

I.  THE JUDGE IMPROPERLY ALLOWED EXTRINSIC IMPEACHMENT OF DEFENDANT AND ANOTHER DEFENSE WITNESS ON A COLLATERAL MATTER AND THEN FAILED TO INSTRUCT THE JURY THAT THE EVIDENCE WAS NOT ADMITTED FOR ITS SUBSTANCE, BUT RATHER, ONLY FOR ITS IMPEACHMENT VALUE.

II. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY TURNED OVER DEFENDANT'S PRE-TRIAL, HANDWRITTEN STATEMENT CONCERNING THE CASE TO THE PROSECUTOR UNDER THE MISTAKEN ASSUMPTION THAT THE RECIPROCAL DISCOVERY RULES REQUIRED HIM TO DO SO; DEFENDANT WAS LATER IMPEACHED WITH THIS STATEMENT.

. . .

IV. THE PROSECUTOR'S SUMMATION VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WHEN HE REPEATEDLY ACCUSED DEFENSE COUNSEL OF DISTORTING THE RECORD AND RUNNING A "SIDE SHOW" IN ORDER TO CONFUSE THE JURY INTO ACQUITTING A GUILTY MAN; THE DEFENDANT'S DUE PROCESS AND FAIR TRIAL RIGHTS WERE FURTHER VIOLATED WHEN THE PROSECUTOR: PRESENTED THE CASE AS SOLELY A CREDIBILITY BATTLE WITH NO MENTION OF HIS BURDEN OF PROOF, VOUCHED FOR THE CREDIBILITY OF HIS WITNESSES, BASELESSLY ACCUSED DEFENDANT OF GETTING OTHERS TO INTIMIDATE WITNESSES AND ATTACKED DEFENDANT'S CHARACTER WITHOUT FOUNDATION. (Partially Raised Below)

V.  THE TRIAL JUDGE IMPROPERLY RULED THAT EVIDENCE WHICH SHOWED THAT DIERDRE BROCK'S TALE OF DEFENDANT'S "APOLO-

GY" TO HER WAS NOT ACCURATE WAS INADMISSIBLE AND COULD EVEN NOT BE USED TO IMPEACH BROCK, THEREBY DENYING DEFENDANT A FAIR TRIAL.

VI. THE JUDGE'S CHARGE TO THE JURORS ON THEIR DUTY TO DE-TERMINE THE CREDIBILITY OF DEFENDANT'S OUT-OF-COURT STATEMENTS WAS ERRONEOUS BECAUSE IT FAILED TO SET FORTH THE STATE'S BURDEN OF PROOF, THEREBY VIOLATING DEFEN-DANT'S RIGHT TO A FAIR TRIAL. (Not raised below)

VII. THE SENTENCE IMPOSED ON DEFENDANT WAS MANIFESTLY EXCESSIVE.

These contentions do not require extended discussion. Point I refers to the impeachment of defense witness Jeffrey Young, who had testified that he and defendant had left the scene in a friend's tan-colored car. Other defense witnesses corroborated this version and placed defendant with them when they heard gunshots. Officer Bocelle testified for the State on rebuttal that Young told him that they had left the scene in a Mercury Cougar belonging to Young's mother. The rebuttal testimony was relevant not only to impeach Young but also other defense witnesses whose testimony, like Young's, placed defendant with them when gunshots were heard. This was consistent with defendant's testimony that he was getting into a car other than the Cougar when "the shots were fired."

■ The ineffective assistance of counsel argument rests upon counsel's having inadvertently provided the State with a copy of defendant's handwritten narrative as part of his discovery package. The statement accorded closely, however, with defendant's trial testimony. We find consequently that there was no prejudice to defendant in the prosecutor's having obtained it as the result of defense counsel's error. *See State v. Fritz,* 105 *N.J.* 42, 519 *A.*2d 336 (1987).

Finally, we do not find that the prosecutor's summation transcended the broad latitude allowed the State to argue its case forcefully and vigorously. Nor do we find error in the court's refusal to permit the defense to call a witness to impeach the credibility of the victim since she had already been cross-examined on the issue in question and defendant had

already made his point. Finally, we perceive no error in the court's instruction respecting the credibility of defendant's out-of-court statements.

We need not decide the issue of defendant's sentence since his aggregate sentence will have to be reconsidered by reason of our remand.

Defendant's conviction of count eight of the indictment is reversed and we remand to the trial court for a new trial thereon or the entry of judgment of conviction under *N.J.S.A.* 2C:12–1b(2). Except for the aggregate sentence, which will have to be reconsidered on the remand, the judgment of conviction is otherwise affirmed.

D'ANNUNZIO, J., dissenting.

The victim, Deirdre Brock, testified that she saw defendant holding a gun at his side as she was leaving the building. Defendant did not respond to her when she asked him why he had the gun. Brock described defendant as looking "like he was very upset. He just looked mean. I never seen him look like that. He just looked real mean."

Brock started running, and after running fifteen to twenty steps she heard a shot. She turned around and saw defendant pointing the gun in her direction. Brock turned her back to defendant and kept running. She heard a second shot and was hit in the leg. Defendant denied that he shot Brock and denied possession of any firearm at the school.

If requested, a lesser included crime must be charged if there is a rational basis in the evidence "for finding that the defendant was not guilty of the higher offense charged but that the defendant was guilty of a lesser-included offense." *State v. Sloan*, 111 *N.J.* 293, 299, 544 *A.*2d 826 (1988). If not requested, the omission of the charge will constitute plain error only if the rational evidential basis for the lesser included offense is clearly indicated by the record. *State v. Dixon*, 125 *N.J.* 223, 255–256, 593 *A.*2d 266 (1991); *State v. Choice*, 98 *N.J.* 295, 299, 486

*A.*2d 833 (1985). The record in this case does not clearly indicate a rational basis for finding defendant not guilty of second degree aggravated assault but guilty of third degree aggravated assault.

The eighth count charged that defendant "did attempt to cause serious bodily injury to Deirdre Brock or did cause such injury purposely, knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly did cause such injury." This charge tracks the applicable statute, *N.J.S.A.* 2C:12–1b(1) (hereafter, § (1)).

Defendant contends that the trial court should have charged, *sua sponte*, third degree aggravated assault under *N.J.S.A.* 2C:12–1b(2) (hereafter § (2)). Section (2) provides that "a person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."

The core difference between § (1) and § (2) is the difference between "serious bodily injury," the § (1) element, and "bodily injury," the § (2) element. Those terms are defined in *N.J.S.A.* 2C:11–1a and b.[1] Neither § (1) nor § (2), however, requires that defendant actually cause injury. An attempt to cause the requisite injury is sufficient to convict. Thus, defendant was guilty of the § (1) offense if he had *attempted* to cause *serious* bodily injury, even if his purposeful or knowing behavior resulted in only bodily injury.[2] "A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise

---

[1] *N.J.S.A.* 2C:11–1a

"Bodily injury" means physical pain, illness or any impairment of physical condition.

*N.J.S.A.* 2C:11–1b

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

[2] The majority, therefore, errs when it focuses exclusively on the nature of the actual injury sustained by the victim.

required for commission of the crime, he: ... when causing a particular result is an element of the crime, does ... anything with the purpose of causing such result without further conduct on his part." *N.J.S.A.* 2C:5–1a(2).

It is uncontroverted that the weapon used in this case was a handgun. Under the facts presented in this record, to convict defendant of the lesser included charge under § (2) the jury would have to determine that defendant purposely or knowingly caused bodily injury to Brock by firing a handgun at her. To be entitled to the lesser included charge, the record must rationally support a determination that defendant, in firing a handgun at Brock, was *not* attempting to cause *serious* bodily injury to her and, therefore, he was not guilty of § (1), but rather, that defendant was guilty of a § (2) offense because he purposely or knowingly caused only bodily injury with the handgun. A § (2) offense, in this context, is grounded on the deliberate use of a handgun against another. Viewed in that light and on this record there was no room to distinguish rationally, and so exquisitely, between use of a handgun with a purpose to cause serious bodily injury and the more limited purpose of using the handgun to cause only bodily injury. *Cf. State v. Rose,* 112 *N.J.* 454, 484, 548 *A.*2d 1058 (1988) ("a person firing a sawed-off shotgun into the abdomen of another at point-blank range necessarily is aware that 'it is practically certain' that such conduct will cause the victim's death.") Consequently, on this record, the evidence necessary to convict on a § (2) charge, would include the elements of an attempt to cause serious bodily injury, which is a violation of § (1).[3]

---

[3] Not every violation of § (2) in which defendant uses a firearm necessarily would include an attempt to cause serious bodily injury in violation of § (1). For example, if a defendant admits to possessing and firing the weapon but denies any intent to injure, he may be guilty of knowingly causing bodily injury, *see N.J.S.A.* 2C:2–2b(2), but not necessarily guilty of an attempt to cause serious bodily injury.

A rational basis for a finding of not guilty on the § (1) charge and a finding of guilty on a § (2) charge was not clearly indicated in this record and, therefore, the trial court had no "obligation on its own meticulously to sift through the entire record ... to see if some combination of facts and inferences might rationally sustain" a § (2) charge. *State v. Choice, supra,* 98 *N.J.* at 299, 486 *A.*2d 833.

Thus, I would affirm.