SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State v. Osborne S. Maloney (A-64-11) (068877)

**Argued November 28, 2012 -- Decided October 16, 2013**

**ARIEL A. RODRÍGUEZ, P.J.A.D. (temporarily assigned), writing for a majority of the Court.**

In this appeal, the issue is whether the trial court was required to instruct the jury sua sponte on accomplice liability and whether it was also required to charge the jury on the lesser-included offenses of attempted theft by receiving stolen property and conspiracy to receive stolen property.

This case stems from the armed robbery of the home of supermarket owner Syoma Shnayder (Sam) and his wife Rita Shnayder. Igor Chichelnitsky planned the robbery because Sam had turned down his offers to supply products to Sam's supermarket stores. Chichelnitsky recruited defendant, Juan Rodriguez, and Nathan Jakubov to commit the robbery. According to the State, on August 16 or 17, 2005, defendant, Rodriguez, and Jakubov drove in Jakubov's Lexus to "scope out" the Shnayder's home in Monroe Township, at which time defendant took photographs of the house. On August 19, 2005, at approximately 10 p.m., Jakubov drove defendant and Rodriguez to the home again. Jakubov stayed in the Lexus while defendant and Rodriguez walked towards the home wearing black masks. Defendant carried a .38 caliber handgun and a knife, and Rodriguez carried a 9-millimeter handgun. Rita was not home but arrived during the robbery. At some point during the ordeal, Rita managed to run out of the house and called 911. Sam was able to get himself loose from zip ties, at which time defendant shot him in the abdomen and ran out of the house. Rodriguez, who was upstairs, heard the gunshot and came downstairs. He saw defendant running from the home and he ran too. Outside, Rodriguez saw Jakubov driving away with defendant. Rodriguez fled on foot with the stolen property: $7000 in cash and two expensive watches.

Monroe Township police officers Richard Livingston and Allan Excel responded to the scene and received a description of the robbers. Shortly thereafter, they discovered Rodriguez several blocks away from the Shnayder home. When the officers approached him Rodriguez was sweaty, avoiding eye contact, and stuttering. Rodriguez identified himself and stated that he was coming from his friend's house in Monroe. The officers noticed bulges in Rodriguez's front pants pocket. Fearing he had a weapon, the officers conducted a pat-down search, which revealed two cellphones, two watches, $7000 in cash, and a black mask in Rodriguez's back pocket. Officer Excel testified that Rodriguez stated that "he knew what went on down the street" and gave a description of the Lexus. The police arrested Rodriguez and gave him <u>Miranda</u> warnings. Rodriguez confessed that he, Jakubov, and defendant robbed the Shnayder home and that defendant shot Sam during the incident. At police headquarters, Rodriguez agreed to make a telephone call to defendant and Jakubov while the police listened. Rodriguez asked defendant and Jakubov to come back and get him, informing them that he had taken $7000 from the home. Jakubov and defendant told Rodriguez to "lay low" and promised that they would come and get him. Rodriguez called a second time and spoke to defendant. After confirming that Rodriguez had $7000 and two expensive watches, defendant agreed to pick him up at a nearby hotel. Defendant returned to Monroe in a taxi and the police took him into custody at the hotel.

Defendant was charged with attempted murder, conspiracy to commit robbery, burglary, weapons offenses, and related charges stemming from the robbery. Defendant testified and denied participating either in the planning or commission of the robbery. He admitted to traveling to Monroe in early August 2005 with Jakubov and Rodriguez but denied knowing the purpose of the trip. Defendant further testified that he returned to the area of the robbery in the early morning after the armed robbery and shooting, believing that he would be reimbursed for his taxicab fare by Rodriguez, and that he would be paid some money after two stolen watches "were swapped."

Defense counsel requested that the jury be instructed on attempted theft by receiving stolen property as a lesser-included offense of robbery. The prosecutor objected, arguing such charge lacked a rational basis in the record. The judge denied defendant's request. The judge also denied defense counsel's request that the jury be instructed on conspiracy to commit theft as a lesser-included offense of robbery. Defendant did not request an

accomplice liability instruction or object to the final jury charge. The jury found defendant guilty of second-degree conspiracy to commit armed robbery, second-degree conspiracy to commit burglary, two counts of first-degree armed robbery, second-degree burglary, second-degree possession of a weapon (a handgun) for an unlawful purpose, and third-degree criminal restraint.

Defendant appealed. The Appellate Division rejected defendant's argument that his convictions should be reversed because the judge did not instruct the jury sua sponte on accomplice liability or on two lesser-included offenses. The Appellate Division affirmed defendant's convictions but concluded that the convictions for conspiracy to commit armed robbery and burglary as well as possession of a weapon for an unlawful purpose merged with the armed robbery conviction, and remanded for the entry of a corrected judgment.

The Supreme Court granted defendant's petition for certification. 209 N.J. 97 (2012).

**HELD**: The trial court did not err by failing to sua sponte instruct the jury on accomplice liability and by rejecting defendant's request to charge the jury on the asserted lesser-included offenses of attempted theft by receiving stolen property and conspiracy to receive stolen property.

1. Whether a defendant is being prosecuted as a principal or an accomplice, "the State must prove that he possessed the mental state necessary to commit the offense." State v. Whitaker, 200 N.J. 444, 458 (2009) (citing N.J.S.A. 2C:2-2(a)). If the State's theory is "that a defendant acted as an accomplice, the trial court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel." State v. Bielkiewicz, 267 N.J. Super. 520, 527 (App. Div. 1993). On the other hand, when the State's theory of the case only accuses the defendant of being a principal, and a defendant argues that he was not involved in the crime at all, then the judge is not obligated to instruct on accomplice liability. A court cannot charge the jury on a lesser-included offense "unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8e. If neither party requests a charge on a lesser-included offense, the court must sua sponte provide an instruction "'when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense.'" State v. Thomas, 187 N.J. 119, 132 (2006) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). (pp. 16-22)

2. The trial judge did not commit plain error by failing to sua sponte instruct the jury on accomplice liability. Even if defendant had requested such a charge, the accomplice liability instruction would not have been warranted because it was not grounded in a rational basis in the trial evidence. None of the evidence presented by the State could support a jury finding that defendant was liable as an accomplice rather than as a principal and defendant suffered no prejudice by the judge's failure to sua sponte charge the jury on accomplice liability. Further, despite defendant's arguments, the evidence could not support a finding that defendant had a lesser intent than that required to commit robbery. Defendant's request that the judge instruct the jury on two lesser-included offenses of robbery -- attempted theft by receiving stolen property and conspiracy to receive stolen property -- was properly denied. Robbery is a crime against a person, which focuses on the use of force or threatened use of force against the victim. Attempted theft by receipt of stolen property and conspiracy to receive stolen property, on the other hand, are property crimes. Thus, the Appellate Division correctly decided that the trial court did not err by failing to sua sponte instruct the jury on accomplice liability and by rejecting defendant's request to charge the jury on the asserted lesser-included offenses of attempted theft by receiving stolen property and conspiracy to receive stolen property. (pp. 22-26)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE ALBIN** filed a separate, **DISSENTING** opinion, stating that the trial judge was required to charge the jury on attempted theft by receiving stolen property as a related offense and that failing to give the jury the opportunity of convicting defendant of the offense he said he committed had the capacity of causing an unjust result.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, HOENS, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion. JUSTICE ALBIN filed a separate, dissenting opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

OSBORNE S. MALONEY,

    Defendant-Appellant.

Argued November 28, 2012 – Decided October 16, 2013

On certification to the Superior Court, Appellate Division.

Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).

Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Middlesex County Prosecutor, attorney).

JUDGE RODRÍGUEZ (temporarily assigned) delivered the opinion of the Court.

In this case, the State alleged that defendant Osborne S. Maloney was part of a four-person conspiracy to commit a targeted armed robbery of a businessman at his home. The State's theory of the case was that one man was the ringleader, another the driver of the getaway car, and defendant and the fourth man were the ones that executed the planned armed

robbery, which went awry and resulted in the businessman being shot in the abdomen by defendant.

The four men were arrested shortly thereafter. One of the accused reached an agreement with the State and testified against defendant. At his trial, defendant testified that he was not part of the conspiracy. He admitted that the day after the armed robbery and shooting, he took a taxi from New York City to a hotel in Monroe Township to pick up a co-defendant in the hopes of obtaining the proceeds from the sale of watches stolen from the victim's home. The jury's verdict was mostly consistent with the State's theory.

Defendant contends that his convictions should be reversed based on the judge's failure to instruct the jury sua sponte on accomplice liability, pursuant to N.J.S.A. 2C:2-6 and State v. Bielkiewicz, 267 N.J. Super. 520 (App. Div. 1993). Defendant also contends that reversal is required for failure to charge two lesser-included offenses. We affirm the judgment of the Appellate Division, which upheld the convictions.

## I.

Defendant was charged with attempted murder, conspiracy to commit robbery, burglary, weapons offenses, and related charges stemming from the robbery of the home of supermarket owner Syoma Shnayder (Sam) and his wife Rita Shnayder. Igor Chichelnitsky planned the robbery because Sam had turned down his offers to

2

supply products to Sam's supermarket stores.  Chichelnitsky recruited defendant, Juan Rodriguez, and Nathan Jakubov to commit the robbery.  Pursuant to an agreement with the State, Rodriguez pleaded guilty to armed robbery and testified at the trial of defendant.

The State's evidence can be summarized as follows.  On August 16 or 17, 2005, defendant, Rodriguez, and Jakubov drove in Jakubov's 2003 Lexus to "scope out" the Shnayder's home in Monroe Township.  Defendant took photographs of the house.  On August 19, 2005, at approximately 10:00 p.m., Jakubov drove defendant and Rodriguez to the home again.  Jakubov stayed in the Lexus while defendant and Rodriguez walked towards the home wearing black masks covering their faces.  Defendant carried a .38 caliber handgun and a knife, and Rodriguez carried a 9-millimeter handgun.

Defendant and Rodriguez went to the backyard of the house. Sam was "snoozing" in the hot tub.  Sam testified that someone in a black ski mask came up behind him, grabbed his hair, put a knife to his throat, and threatened to kill him if he screamed. A second man in a ski mask entered the backyard.  Sam's hands were tied behind his back with plastic zip ties.  In his testimony, Rodriguez identified defendant as the man who put a knife to Sam's throat.  Rodriguez also testified that he demanded to know where money was hidden.  Sam directed him to

3

the kitchen, where Rodriguez took $7000 from a table. Rodriguez brought Sam upstairs to search for additional money.

Rita returned home, noticed defendant, and began screaming while asking, "Where's my husband?" Defendant covered her mouth and held the knife to her head. Sam and Rodriguez returned to the first floor. Rita continued screaming. Thereafter, Sam told the robbers he had two expensive watches in the kitchen, and one of the men retrieved the watches.

Rita managed to free herself, ran to a neighbor's home, and called 911. Sam released his arms from the ties. Defendant then shot Sam in the left side of his abdomen and ran out of the house. Rodriguez testified that he was upstairs looking for more items to steal when he heard the gunshot. He came downstairs and saw defendant running from the home. Rodriguez began to follow but Sam grabbed him by the leg. Rodriguez kicked himself free and ran out of the home. Outside, he saw Jakubov driving away with defendant. Rodriguez fled on foot. While doing so, he discarded the shirt he was wearing, his plastic gloves, and a handgun.

Monroe Township police officers Richard Livingston and Allan Excel responded to the scene and received a description of the robbers. Shortly thereafter, they discovered Rodriguez several blocks away from the Shnayder home. When the officers approached him Rodriguez was sweaty, avoiding eye contact, and

4

stuttering.  Rodriguez identified himself and stated that he was coming from his friend's house in Monroe.  The officers noticed bulges in Rodriguez's front pants pocket.  Fearing he had a weapon, the officers conducted a pat-down search, which revealed two cellphones, two watches, $7000 in cash, and a black mask in Rodriguez's back pocket.

Officer Excel testified that Rodriguez stated that "he knew what went on down the street" and gave a description of the Lexus.  The police arrested Rodriguez and gave him Miranda[1] warnings.  Rodriguez confessed that he, Jakubov, and defendant robbed the Shnayder home and that defendant shot Sam during the incident.

At police headquarters, Rodriguez agreed to make a telephone call to defendant and Jakubov while the police listened.  Rodriguez asked defendant and Jakubov to come back and get him, informing them that he had taken $7000 from the home.  Jakubov and defendant told Rodriguez to "lay low" and promised that they would come and get him.  Several minutes later, Rodriguez was informed by Jakubov's girlfriend that Jakubov had been arrested for driving without a license.

Rodriguez spoke to defendant and asked him to pick him up. Defendant asked how much money Rodriguez had removed from the

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

5

premises.  Rodriguez confirmed that he had $7000 plus two expensive watches.  Defendant agreed to pick up Rodriguez at a nearby hotel.  Defendant returned to Monroe in a taxi and the police took him into custody at the hotel.

Defendant testified and denied participating either in the planning or commission of the robbery.  Defendant admitted to traveling to Monroe in early August 2005 with Jakubov and Rodriguez but denied knowing the purpose of the trip.  According to defendant, Rodriguez took photographs of the Shnayder home. Defendant also denied that Jakubov and Rodriguez asked him to return to the area at a later date.

Defendant testified that he returned to the area where the robbery took place in the early morning after the armed robbery and shooting.  He testified as follows on direct:

> [Defense Counsel]:  Did you come down to Monroe Township on August 20th, 3 o'clock in the morning?
>
> [Defendant]:   Yes, ma'am.
>
> Q.   And how did you come to wind up coming down to Monroe Township?
>
> A.   All right.  Nathan [Jakubov] was with a girl that I hooked him up with.
>
> Q.   What's that girl's name?
>
> A.   Asia.
>
> Q.   Do you know her last name?

6

A.    I don't recall her last name.    I don't, ma'am, no.    Nathan was with Asia, the girl I hooked him up with.    So, Asia called me and said Nathan --

[Assistant Prosecutor]:    Objection, hearsay.

[Judge]:    Sustained.

Q.    Did you receive a telephone call that evening?

A.    Yes, ma'am.

Q.    And as a result of that telephone call -- did the telephone call come from Asia?

A.    Yes, ma'am.

Q.    As a result of that telephone call, did you do something?

A.    Yes, ma'am.

Q.    And what was that?

A.    I went to, I went -- I reported to Asia as a result of that telephone call, ma'am.

Q.    And then what happened?

A.    Then when I reported to her, she was telling me what happened with Nathan.

Q.    Okay.    And this was what time?

A.    This is about midnight.    Midnight, a little past midnight, yeah.

Q.    And what did you do after that?    What happened after that?

A.    I got the property from Asia, Nathan's property, like his chain, his wallet, his phone stuff, like that.

7

Q.    Where was Nathan if you know?

A.    She had told me that he had got arrested.  He got pulled over.

Q.    Okay.  And then what happened?

A.    Then while I had the phone, Juan Rodriguez called.  I answered the phone.  He told me that --

[Assistant Prosecutor]:  Objection, hearsay.

[Judge]:  Sustained.

Q.    Did Juan Rodriguez ask you to do anything?

A.    Yes, ma'am.

Q.    And as a result of Juan Rodriguez asking you to do something, what did you do?

A.    I called the cab, Liberty Cab . . . and asked them, can I get a cab to Jersey. He said I have to wait about 30 minutes, 30, 45 minutes, for a cab to take me to Jersey.

Q.    Did Juan tell you he had any money on him?

A.    No, no, ma'am.

Q.    What did he tell you he had on him?

A.    He told me --

[Assistant Prosecutor]:  Objection.

A.    He told me he had two watches, ma'am.

[Judge]:  Sustained.

Q.    Did you have any reason to believe after speaking with Juan that he had money

8

to go hire his own cab or limousine from where he was?

A.   No ma'am.

Q.   And did you go in the cab?

A.   Yes, ma'am.

Q.   And at some point, did you arrive in New Jersey?

A.   Yes, ma'am.

Q.   And what happened when you arrived in New Jersey?

A.   When I got in front of the hotel, I called him back and told him I was in front of the hotel, to come outside, but as soon as I looked around, there was a lot of cops around and they pulled me out the car and leave me on the floor and asked me my name.  I said my name is Osborne Maloney.

Defendant admitted that he thought he would be reimbursed for his taxicab fare by Rodriguez, and that he would be paid some money after two stolen watches "were swapped."

At a conference to discuss the jury charge, defense counsel requested that the jury be instructed on attempted theft by receiving stolen property as a lesser-included offense of robbery.  The prosecutor objected, arguing such charge lacked a rational basis in the record for a jury to find that defendant received stolen property during the commission of a robbery.  The judge denied defendant's request.  The judge also denied defense counsel's request that the jury be instructed on

9

conspiracy to commit theft as a lesser-included offense of robbery.

Defendant did not request an accomplice liability instruction or object to the final jury charge.

II.

The jury found defendant guilty of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and 2C:15-1; second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and 2C:18-2; two counts of first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2; second-degree possession of a weapon (a handgun) for an unlawful purpose, N.J.S.A. 2C:39-4a; and third-degree criminal restraint, N.J.S.A. 2C:13-2. In fashioning a sentence, the judge found three of the aggravating factors set by N.J.S.A. 2C:44-1a: (2) the gravity and seriousness of harm inflicted on the victim; (3) the risk that defendant will commit another offense; and (9) the need for deterring defendant and others from violating the law. The judge found no mitigating factors, N.J.S.A. 2C:44-1b. The judge imposed concurrent prison terms aggregating eighteen years subject to a period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a five-year term of parole supervision upon release.

Defendant appealed. The Appellate Division rejected defendant's argument that his convictions should be reversed

10

because the judge did not instruct the jury sua sponte on accomplice liability. The Appellate Division analogized this case to State v. Crumb, 307 N.J. Super. 204, 221-22 (App. Div. 1997), certif. denied, 153 N.J. 215 (1998), in which the appellate panel held that a defendant was not entitled to an accomplice liability instruction where the State prosecuted him as the principal and the defendant argued that he did not commit the crime at all. In this case, the Appellate Division similarly held that, because defendant testified that he had no involvement either in the planning or commission of the crime and the State prosecuted defendant only as a principal, the accomplice liability instruction was not warranted and not plainly erroneous. Thus, the Appellate Division concluded there was no rational basis to provide an accomplice liability instruction to the jury in this case.

The Appellate Division also rejected defendant's argument that the judge erred in failing to instruct the jury on two lesser-included offenses – "'attempted theft via a theory of receiving stolen property as a lesser-included offense of the robbery', and '[] conspiracy to commit theft . . . as a lesser-included offense of the charge of conspiracy to commit robbery.'" The Appellate Division noted that "[i]t is clear from a plain reading of the statute [N.J.S.A. 2C:20-7a] that receiving stolen property under the present circumstances is not

11

a lesser-included offense of robbery." The appellate panel reasoned that "[r]eceiving stolen property requires proof that the defendant knew the property was stolen, and robbery requires the use or threat of force during the commission of a theft."

The Appellate Division also rejected defendant's argument that the judge erred in not instructing the jury that receiving stolen property was a related offense. It determined "that the two offenses do not share a common factual nucleus in that the same conduct does not establish the crimes of robbery and receipt of stolen property." The panel reasoned that "the robbery was completed before the alleged 'attempted theft' and 'conspiracy to commit theft' that defendant had requested be charged to the jury." Accordingly, the panel determined defendant's requested charges were not related offenses and the judge had no duty to charge them.

The Appellate Division affirmed defendant's convictions but ordered that the convictions for conspiracy to commit armed robbery and burglary as well as possession of a weapon for an unlawful purpose merged with the armed robbery conviction, and remanded for the entry of a corrected judgment. We granted defendant's petition for certification. 209 N.J. 97 (2012).

III.

Defendant contends that the Appellate Division erred by affirming the judge's failure to charge the jury on accomplice

12

liability. First, defendant argues that the absence of the charge left the jury unable to consider lesser-included offenses pursuant to Bielkiewicz, supra, 267 N.J. Super. at 520. Defendant also argues that the jury had no guidance to understand the accomplice liability issues if it did not find defendant liable as a principal. Defendant points to inconsistencies in the jury's verdict such as convicting defendant only of conspiracy to commit burglary and robbery rather than conspiracy to commit armed robbery, despite convicting him of armed robbery and armed burglary as an indication that the jury did not believe he was culpable as a principal. He argues that the Appellate Division erred in discounting the possibility that the jury could reject both parties' theories and instead reach a "middle-ground" conclusion that he participated as an accomplice.

Defendant further argues that the judge had a duty sua sponte to instruct the jury on any lesser-included offenses. He argues that the Appellate Division erred in concluding that the charges of attempted theft by receiving stolen property and conspiracy to commit theft by receiving stolen property were not lesser-included offenses of robbery.

Defendant argues that the Appellate Division implicitly relied on State v. Smith, 136 N.J. 245 (1994), in reaching the erroneous conclusion. Defendant argues that the instant case is

13

more analogous to State v. Freeman, 324 N.J. Super. 463 (App. Div. 1999), in which the Appellate Division required theft by deception to be charged as a lesser-included offense of robbery "where the theft pertained . . . to a portion of the same property alleged to be the proceeds of the robbery."  Defendant argues that the property at issue in this case -- two watches -- constituted proceeds of the robbery and that the judge's failure to instruct on lesser-included offenses left the jury with stark choices:  either conviction of robbery or acquittal.  Finally, defendant argues that the Appellate Division misinterpreted prior cases in determining that receiving stolen goods from a robbery is not a crime related to the robbery of those goods.

The State argues that, under the plain error standard under Rule 2:10-2, defendant's convictions do not warrant reversal. The State notes that defendant neither requested an instruction on accomplice liability at trial nor objected to the final jury charge.  The State argues that the evidence did not provide a rational basis to charge defendant with accomplice liability. The State's theory was that defendant conspired with his co-defendants to commit an armed robbery and acted as a principal. The defense theory was that defendant did not participate in or even know of the armed robbery and home invasion.

The State also argues that defendant's reliance on Bielkiewicz, is misplaced, because an instruction on accomplice

14

liability is not needed when neither party's theory of the case suggests that defendant had a different mental state than that of a principal. According to the State, defendant did not argue that he had a lesser mental state than his co-defendants. Rather, he argued that he had <u>no</u> culpable mental state. The State also maintains that instructing the jury on accomplice liability would have prejudiced defendant because it would have provided the jury with an additional basis on which to convict defendant.

The State also contends that the trial judge correctly determined that receiving stolen property cannot be a lesser-included offense of robbery because the former is a crime against property and the latter is a crime against a person. Additionally, the State argues that defendant failed to show that the trial court should have charged attempted receipt of stolen property as a related offense because that charge does not "share a common factual nucleus" with robbery, the actual offense charged. <u>See</u> <u>State v. Thomas</u>, 187 <u>N.J.</u> 119, 130 (2006). Defendant testified that his participation was limited and did not commence until after the armed robbery and home invasion were completed. At the time he decided to travel to Monroe, Rodriguez and Jakubov were in police custody, he simply drove to the locale of the crime to give Jakubov a ride home and hoped to

15

get reimbursed for the fare by getting part of the robbery proceeds.

IV.

When a defendant fails to raise an issue at trial, appellate review is governed by the plain error standard. R. 2:10-2. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." Ibid.; see State v. Galicia, 210 N.J. 364, 386 (2012); State v. Macon, 57 N.J. 325, 337 (1971). If a defendant fails to object to a trial court's instructions, the failure to challenge the jury charge is considered a waiver to object to the instruction on appeal. R. 1:7-2; State v. Torres, 183 N.J. 554, 564 (2005).

In State v. Green, this Court held that "[a]ppropriate and proper charges to a jury are essential for a fair trial." 86 N.J. 281, 287 (1981). An erroneous jury charge "when the subject matter is fundamental and essential or is substantially material" is almost always considered prejudicial. Id. at 291. Such errors are "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206 (1979). "[A] presumption of reversible error arises" that can only be excused if the error is determined to be "'harmless beyond a reasonable doubt.'" State v. Collier, 90 N.J. 117, 123

16

(1982) (quoting <u>Chapman v. California.</u>, 386 <u>U.S.</u> 18, 24, 87 <u>S.</u>

<u>Ct.</u> 824, 828, 17 <u>L. Ed.</u> 2d 705, 710 (1967)).

<u>N.J.S.A.</u> 2C:2-6 governs accomplice liability, providing in
pertinent part:

> a. A person is guilty of an offense if it is
> committed by his own conduct or by the
> conduct of another person for which he is
> legally accountable, or both.
>
> b. A person is legally accountable for the
> conduct of another person when . . .
>
> > (3) He is an accomplice of such other
> person in the commission of an offense;
> . . .
>
> c. A person is an accomplice of another
> person in the commission of an offense if:
>
> > (1) With the purpose of promoting or
> facilitating the commission of the offense;
> he
>
> > > (a) Solicits such other person to
> > commit it;
> >
> > (b) Aids or agrees or attempts to aid
> > such other person in planning or
> > committing it . . . .
>
> [<u>N.J.S.A.</u> 2C:2-6.]

Whether a defendant is being prosecuted as a principal or

an accomplice, "the State must prove that he possessed the

mental state necessary to commit the offense." <u>State v.</u>

<u>Whitaker</u>, 200 <u>N.J.</u> 444, 458 (2009) (citing <u>N.J.S.A.</u> 2C:2-2(a)).

"To be found guilty as an accomplice, a defendant must not only

share the <u>same</u> intent as the principal who commits the crime,

17

but also must 'at least indirectly participate[] in the commission of the criminal act.'" Id. at 459 (quoting Bielkiewicz, supra, 267 N.J. Super. at 528).

If the State's theory is "that a defendant acted as an accomplice, the trial court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel." Bielkiewicz, supra, 267 N.J. Super. at 527. Furthermore, "when an alleged accomplice is charged with a different degree offense than the principal or lesser[-]included offenses are submitted to the jury, the court has an obligation to 'carefully impart[] to the jury the distinctions between the specific intent required for the grades of the offense.'" Id. at 528 (quoting State v. Weeks, 107 N.J. 396, 410 (1987)). In Bielkiewicz, two co-defendants were found guilty of murder after a victim was killed by one gunshot wound to the chest. Id. at 525-26. Because witnesses could not definitively identify which defendant fired the fatal shot, the State's theory was the one defendant was guilty of murder as the principal and the other was guilty as an accomplice. Id. at 526. The Appellate Division determined that, based on the State's theory of the case, the judge was obligated to "provide the jury with accurate and understandable instructions regarding accomplice liability for murder." Id. at 527. The Appellate Division reversed

18

defendants' convictions because the judge failed to charge on accomplice liability.  Id. at 536.

When the State's theory of the case only accuses the defendant of being a principal, and a defendant argues that he was not involved in the crime at all, then the judge is not obligated to instruct on accomplice liability.  See, e.g., Crumb, supra, 307 N.J. Super. at 221-22; State v. Oliver, 316 N.J. Super. 592, 597 (App. Div. 1998), aff'd, 162 N.J. 580 (2000); State v. Rue, 296 N.J. Super. 108, 115-16 (App. Div. 1996), certif. denied, 148 N.J. 463 (1997).

N.J.S.A. 2C:1-8d governs lesser-included offenses.  The statute provides:

> A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense.  An offense is so included when:
>
> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
>
> [N.J.S.A. 2C:1-8d.]

19

N.J.S.A. 2C:1-8e provides that a court cannot charge the jury on a lesser-included offense "unless there is a rational basis for a verdict convicting the defendant of the included offense." This Court has affirmed the statutory requirements, finding that "whether an included offense charge is appropriate requires (1) that the requested charge satisfy the definition of an included offense set forth in N.J.S.A. 2C:1-8d, and (2) that there be a rational basis in the evidence to support a charge on that included offense." Thomas, supra, 187 N.J. at 131.

In Thomas, supra, this Court also addressed whether a judge sua sponte must charge the jury on a related offense not requested by either party. Id. at 133. This Court first distinguished between included offenses and related offenses, explaining that "[w]hether an offense is an included offense of another charge requires a comparison of the statutory elements of each charge." Id. at 129. If the State requests an instruction on a lesser-included offense, it may be given only if the offense satisfies N.J.S.A. 2C:1-8d. Id. at 131. If the defendant makes such a request, the court must focus on whether there is a rational basis in the evidence to support such a charge. Id. at 131-32. If neither party requests a charge on a lesser-included offense, the court must sua sponte provide an instruction "'when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the

20

greater offense.'" Id. at 132 (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

In contrast, related offenses are those that "share a common factual ground, but not a commonality in statutory elements, with the crimes charged in the indictment." Ibid. This Court held that "due to constitutional grand jury and notice considerations, trial courts are under no obligation to give, sua sponte, a related offense instruction that is not requested by either the prosecution or the defense." Id. at 123. A court may instruct on a related offense when "the defendant requests or consents to the related offense charge, and there is a rational basis in the evidence to sustain the related offense." Id. at 133. This Court emphasized that a trial court has no obligation to "'scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty.'" Ibid. (quoting State v. Brent, 137 N.J. 107, 118 (1994)).

Robbery has been defined as a theft during which a defendant: "(1) [i]nflicts bodily injury or uses force upon another; or (2) [t]hreatens another with or purposely puts him in fear of immediate bodily injury; or (3) [c]ommits or threatens immediately to commit any crime of the first or second degree." N.J.S.A. 2C:15-1a. On the other hand, one commits the offense of theft by receiving stolen property "if he knowingly

21

receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen. . . . 'Receiving' means acquiring possession, control or title . . . of the property." N.J.S.A. 2C:20-7a.

In examining whether a theft charge should be given in a robbery case, the Appellate Division in Freeman, noted that, "[i]n determining whether a theft charge of lesser degree, even if not a lesser-included offense, should be charged, the Court requires a careful analysis of not only the factual underpinning of the lesser charge but the harm to be protected against." 324 N.J. Super. at 470 (emphasis added).

V.

We hold that the judge did not commit plain error by failing to sua sponte instruct the jury on accomplice liability. Further, even if defendant had requested such a charge, the accomplice liability instruction would not have been warranted because it was not grounded in a rational basis in the trial evidence.

First, we note that defendant's reliance on inconsistencies in the jury's verdict to bolster his argument that the jury might have convicted him as an accomplice rather than a principal is unpersuasive because the verdicts are returned long after the jury has been instructed. Moreover, "[o]ur system of justice has long accepted inconsistent verdicts as beyond the

22

purview of correction by our court[]." State v. Kelly, 201 N.J. 471, 487 (2010).

Moreover, defendant was charged in the indictment as a principal in the robbery and attempted murder. The State presented proofs consistent with the theory that Rodriguez and defendant were the only conspirators who entered the home and interacted with Sam and his wife. Rodriguez testified that defendant shot Sam. In addition, defendant's DNA was recovered from items found in Jakubov's Lexus, which was driven to and from the scene of the crime, long before the time he admitted that he returned to Monroe Township in a taxi.

Defendant, on the other hand, testified that he did not go to the victims' home the night of the robbery and shooting. Rather, he admitted that his only involvement in this case arose when he answered a call from Rodriguez made to Jakubov's telephone, during which Rodriguez asked defendant to pick him up from a hotel in New Jersey. Defendant went to the hotel expecting to receive the proceeds of some of the items stolen during the armed robbery.

We conclude that none of the evidence presented by the State could support a jury finding that defendant was liable as an accomplice rather than as a principal. Therefore, defendant suffered no prejudice by the judge's failure to sua sponte charge the jury on accomplice liability. See, e.g., Crumb,

supra, 307 N.J. Super. at 221-22; see also Oliver, supra, 316 N.J. Super. at 597; Rue, supra, 296 N.J. Super. at 115-16.

Further, despite defendant's arguments, the evidence could not support a finding that defendant had a lesser intent than that required to commit robbery. See Crumb, supra, 307 N.J. Super. at 221-22. The jury had two options. It could credit Rodriguez's testimony that defendant was equally involved in planning and committing the robbery, or it could credit defendant's contrary testimony. The evidence could not support a finding that defendant was guilty as an accomplice in the armed robbery, shooting or burglary.

We also conclude that defendant's request that the judge instruct the jury on two lesser-included offenses of robbery -- attempted theft by receiving stolen property and conspiracy to receive stolen property -- was properly denied. The statutory elements of those offenses, set forth above, do not overlap. Compare N.J.S.A. 2C:15-1a, with N.J.S.A. 2C:20-7a. We agree with the trial court and the Appellate Division's reasoning that robbery is a crime against a person, which focuses on the use of force or threatened use of force against the victim. See N.J.S.A. 2C:15-1a. Attempted theft by receipt of stolen property and conspiracy to receive stolen property, on the other hand, are property crimes. See N.J.S.A. 2C:20-7a.

24

Beyond the lack of shared statutory elements, the record does not provide a rational basis for charging attempted theft by receipt of stolen property or conspiracy to receive stolen property as a lesser-included offense of robbery. See Thomas, supra, 187 N.J. at 131; see also Smith, supra, 136 N.J. at 250 (concluding that theft of services is not a lesser-included offense of armed robbery because they have different "operative ingredient[s] -- deception in the one case, the threat of immediate bodily injury in the other"). As discussed previously, defendant testified that he had no involvement whatsoever with the conspiracy, burglary, armed robbery or shooting of the victim. That factual scenario could not support a finding that defendant's requested attempt and conspiracy jury charges were lesser-included offenses.

Thus, our review of the record leads to the conclusion that the receipt of stolen property offenses do not share a common factual nucleus with the robbery charge in this case. See Thomas, supra, 187 N.J. at 130 (citing N.J.S.A. 2C:1-8a). The robbery took place at the Shnayder's home hours before Rodriguez contacted defendant to request a ride home. Defendant adamantly denied being present at the robbery and instead testified that he only went to the hotel in the early morning hours after the robbery to pick up watches that were stolen from the Shnayder's home.

25

The issue of related offenses was not raised by defendant in the Appellate Division. Thus, we merely note that the watches alone are not enough to establish a common factual nucleus between the robbery charge and attempted theft by receiving stolen property.

By way of summary, we hold that the Appellate Division correctly decided that the trial court did not err by failing to sua sponte instruct the jury on accomplice liability and by rejecting defendant's request to charge the jury on the asserted lesser-included offenses of attempted theft by receiving stolen property and conspiracy to receive stolen property.

VI.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, HOENS, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRIGUEZ's (temporarily assigned) opinion. JUSTICE ALBIN filed a separate, dissenting opinion.

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

OSBORNE S. MALONEY,

    Defendant-Appellant.


    JUSTICE ALBIN, dissenting.

    Defendant Osborne Maloney was indicted for a number of offenses relating to a home invasion, including second-degree conspiracy to commit burglary (N.J.S.A. 2C:18-2 and N.J.S.A. 2C:5-2), second-degree aggravated assault (N.J.S.A. 2C:12-1(b)(1)), first-degree attempted murder (N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-1), and first-degree armed robbery (N.J.S.A. 2C:15-1). Codefendant Juan Rodriguez implicated Maloney in the robbery and shooting of the homeowner. Maloney, however, denied committing those crimes and testified that the only crime he committed was agreeing to receive stolen property from Rodriguez. Maloney requested that the trial judge instruct the jury on attempted theft by receiving stolen property. Although Maloney's attorney wrongly characterized attempted theft by receiving stolen property as a lesser-included offense of robbery, receiving stolen property clearly was a related offense

1

to robbery.  Nevertheless, the trial judge refused to charge the jury on attempted theft by receiving stolen property -- the offense Maloney admitted committing.

In my view, the trial judge erred in not giving the charge to the related offense of receiving stolen property.  That is because the jury was left with rendering an all-or-nothing outcome -- either convict Maloney of the offenses related to the home invasion or acquit him despite his admission to committing the crime of attempted receipt of stolen property.  Consequently, if the jury believed Maloney, it was left with the bleak option of completely acquitting him even though he admitted to committing the crime of attempted theft.  By the standards of our jurisprudence, failing to give the jury the opportunity of convicting Maloney of the offense he said he committed had the capacity of causing an unjust result.  I therefore respectfully dissent.

I.

A trial judge is required to charge the jury with offenses related to those in the indictment, provided that the defendant requests the charge and the charge is factually supported by the record.  N.J.S.A. 2C:1-8(e); State v. Sloane, 111 N.J. 293, 299 (1988) (citing State v. Crisantos, 102 N.J. 265, 278 (1986)).  The purpose of this rule is to avoid presenting the jury with an

"all-or-nothing" choice, a choice between convicting a defendant of an offense greater than the one he committed and not convicting him at all despite his guilt of a lesser offense. See State v. Garron, 177 N.J. 147, 180 (2003) ("No defendant should be convicted of a greater crime or acquitted merely because the jury was precluded from considering a lesser offense that is clearly indicated in the record."), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed. 2d 1204 (2004). We have expressed concern that a jury faced with that stark alternative may be more likely to err on the side of convicting rather than acquitting. See Keeble v. United States, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 1997-98, 36 L. Ed. 2d 844, 850 (1973) ("Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."), quoted in Sloane, supra, 111 N.J. at 299.

In determining whether an uncharged offense is related to an offense charged in an indictment, we do not compare the statutory elements between the two, as we would if considering a lesser-included offense. State v. Thomas, 187 N.J. 119, 129-30 (2006). Instead, we focus on "whether the offense charged and the related offense share a common factual nucleus." Id. at 130. Our jurisprudence does not provide a neat definition of what constitutes a "common factual nucleus" shared by a charged

offense and an uncharged related offense.  However, in this case, it would be fair to say that the stolen property from a robbery that is also the factual predicate for receiving stolen property is the "common factual nucleus" shared by both crimes.

Robbery is nothing more than an aggravated theft.  See N.J.S.A. 2C:15-1(a).  A theft occurs when a person "unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof."  N.J.S.A. 2C:20-3(a).  Receiving stolen property occurs when a person "knowingly receives . . . movable property of another knowing that it has been stolen, or believing that it is probably stolen."  N.J.S.A. 2C:20-7.  The stolen property is the common nucleus between the two offenses.  That prosecutors routinely charge defendants alternatively with theft and/or receiving stolen property is a recognition of the close tie between the two offenses.  Thus, in a prosecution with alternative theories, a jury presented with facts establishing that a defendant is knowingly in possession of stolen property does not have to acquit if the State cannot prove theft beyond a reasonable doubt.  The same logic applies here, but to the advantage of defendant.

II.

Defendant was charged with robbery and requested that the jury be given the option of convicting him of the lesser,

4

related offense of attempted receipt of stolen property. The request was defendant's consent to forgo any objection he could have raised to submission to the jury of an offense not contained in the indictment. See Thomas, supra, 187 N.J. at 132-33. That defendant's lawyer inartfully requested the charge by characterizing the receiving charge as a lesser-included offense rather than a related offense should not make a difference. Certainly, formalism should not prevail over substance, particularly when the requested charge is supported by the record.

Here, the jury was given the all-or-nothing alternative that our jurisprudence cautions against. Defendant's request for the related-offense charge and the trial court's failure to give the charge caused presumptive prejudice. State v. Nelson, 173 N.J. 417, 446 (2002) ("'[S]o critical is the need for accuracy that erroneous instructions on material points are presumed to be reversible error.'") (quoting State v. Martin, 119 N.J. 2, 15 (1990)). In short, because the trial judge's error had the capacity to cause an unjust result, defendant should be granted a new trial. See R. 2:10-2. I therefore cannot agree with the majority's affirmance of defendant's conviction. For this reason, I respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO. ___A-64___                    SEPTEMBER TERM 2011

ON CERTIFICATION TO_____   Appellate Division, Superior Court


STATE OF NEW JERSEY,

     Plaintiff-Respondent,

               v.

OSBORNE S. MALONEY,

     Defendant-Appellant.


DECIDED_____     October 16, 2013_____
_____   Chief Justice Rabner_____PRESIDING
OPINION BY_____     Judge Rodriguez_____
CONCURRING/DISSENTING OPINIONS BY_____
DISSENTING OPINION BY_____   Justice Albin_____


| CHECKLIST | AFFIRM | REVERSE |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | 1 |

1