**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4883-16T3

STATE OF NEW JERSEY
IN THE INTEREST OF D.R.-J.,
a Juvenile.

_____

Submitted December 4, 2018 – Decided January 7, 2019

Before Judges Suter and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket Nos. FJ-18-0260-16, FJ-18-0261-16, and FJ-18-0147-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Perry Farhat, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an adjudication of delinquency entered by Judge

Anthony F. Picheca, Jr. on February 22, 2017, following a two-day bench trial.

D.R.-J. was charged with:  first-degree robbery, pursuant to N.J.S.A. 2C:15-

1(a)(1); second-degree conspiracy to commit robbery, pursuant to N.J.S.A. 2C:5-2(a)(1); second-degree possession of a handgun, pursuant to N.J.S.A. 2C:39-4(a) for an unlawful purpose; second-degree unlawful possession of a handgun, pursuant to N.J.S.A. 2C:39-5(b); third-degree criminal restraint, pursuant to N.J.S.A. 2C:13-2(a); fourth-degree possession of marijuana, pursuant to N.J.S.A. 2C:35-10(a)(4); and fourth-degree riot, pursuant to N.J.S.A. 2C:33-1(a)(1).[1]

D.R.-J. pled guilty to possession of marijuana and fourth-degree riot. Following trial, the judge adjudicated him delinquent on the remaining charges and imposed a two-year sentence at the New Jersey Training School for Boys at Jamesburg, along with requisite fees and penalties.

D.R.-J. had a Facebook account of "Dre Savage" that was registered with his email address, and authenticated by E.M.,[2] one of the three victims. J.B. and S.R. were the others. After making arrangements on Facebook, D.R.-J. and two males met the three victims in a parking lot on Class Place in New Brunswick, with the intention of selling an Xbox game system to D.R.-J. Upon arrival, the

---

[1] The latter two charges were issued out of Middlesex County.

[2] We use initials to protect the privacy of the victims.

A-4883-16T3

victims noticed the suspects sitting in a Cadillac. They ducked down, ostensibly to avoid being noticed as the victims drove closer.

After parking their TrailBlazer, S.R., exited the vehicle to meet with D.R.-J., but it soon became apparent that no transaction was going to transpire because D.R.-J. had a "blank face," according to E.M.'s account. As the two other victims approached the trunk of the TrailBlazer in order to purportedly effectuate the sale, several males wearing black facemasks "came out of the bushes" and ran towards the victims' vehicle armed with a revolver and stun guns. E.M. and J.B. were forced at gunpoint to get out of the car. J.B. was forced to kneel with a stun gun pointed at his back, and another assailant pointed a revolver at E.M. During this encounter, E.M. testified that he heard stun guns sounding, and he observed one of them with the word "police" on the handle and the other had a two-pronged fixture. After the assailants shouted, "where's the money, where's the money?" the victims were robbed of a backpack, an iPhone, a Louis Vuitton wallet, a driver's license, credit cards, and an Xbox game system. D.R.-J. was involved with the robbery and fled the scene afterwards, along with the other actors.

A-4883-16T3

E.M.[3] reported the crimes to the New Brunswick police the following day. At headquarters, he met with Officer Sean[4] Cahill and demonstrated for him on a computer how he located D.R.-J. on Facebook and identified him from photographs posted on his account, along with the other suspects. The man with a distinctive "cross tattoo" between his eyes was also identified on D.R.-J.'s Facebook page as the armed gunman by E.M. Officer Cahill recognized D.R.-J. and matched his Facebook picture with a photograph on file in the police department.

Afterwards, E.M. returned to headquarters the following day and provided a recorded statement to Detective Andrew Weiss, who confirmed that D.R.-J.'s Facebook photograph was registered with an email address owned by him.[5] Further, the cross tattoo detail led to a positive identification of Eric Inman, a cousin of D.R.-J.'s, who was also familiar to the police. In combination, this information led to the issuance of a search warrant for Inman's apartment located at 11 Class Place, a short distance from the crime scene. A backpack and other

---

[3] E.M. was charged with committing an unrelated "robbery and other crimes" on the day in question in North Brunswick.

[4] Also referred to as "Shawn" in the record.

[5] D.R.-J.'s email address contains his first, middle and last names and ends with gmail.com.

A-4883-16T3

items belonging to E.M. were recovered and identified by him, together with two stun guns and black cloth facemasks. One of the stun guns had an attached flashlight with the word "police" on it and was described by E.M. as the same one used during the hold-up. Based upon this information, D.R.-J. was arrested soon thereafter in the area of the incident, with marijuana found on his person. Three witnesses testified at trial: E.M., Officer Cahill, and Detective Weiss. At trial, E.M. identified D.R.-J. in the courtroom, and the stolen backpack.

Judge Picheca recounted the testimony and evidence presented at the hearing and concluded:

> So when all is reviewed, the [c]ourt has to determine the credibility of the witness because it all hangs on the credibility of the witness and I find as a matter of this [c]ourt's determination that [E.M.] did testify credibly and I find as a result of his testimony that - - and the evidence before me that the defendant was clearly a participant in this robbery.
>
> And I cannot find any doubt in my mind that the defendant wasn't aware that there was going to be this robbery and that there was essentially a setup and while he didn't have direct conversation with the victim, I don't find that to be a necessary element of finding culpability.
>
> He was involved. He was identified. It does not appear that when he was interviewed anything but his direction to Facebook, the confirmation and circling of the parties involved that he recognize[d]. The testimony and identification is critical.

A-4883-16T3

And [from] that point everything essentially flows from there. Defendant was a participant. He was ID'd correctly by [E.M.]. And as I said, the [c]ourt believes his testimony. I don't believe he was lying about the weapons, the use of them, the items that were taken, that he was with the parties involved, was held and put into fear of safety as a result of the presence of weapons and that their use was not for a lawful purpose.

And I have no doubt he was a participant, was an accomplice and the [c]ourt finds that there has been beyond a reasonable doubt and in this [c]ourt's mind weighing heavily on the credibility of - - of [E.M.] and the consistency of what are the elements of the offenses that he's been charged with.

As a result the [c]ourt finds that the defendant is guilty of the charges, of first-degree robbery, conspiracy to commit robbery, possession of a firearm for an unlawful purpose, unlawful possession of a firearm and criminal restraint, and that's the order of the [c]ourt.

For the first time on appeal, D.R.-J. argues that his convictions were against the weight of the evidence, even though he never made a motion for a new trial pursuant to Rule 3:20-1.

On appeal, defendant presents the following arguments:

POINT I

THE TRIAL JUDGE ERRED IN ADJUDICATING THE JUVENILE DELINQUENT AFTER THE STATE FAILED TO PROVE THE CHARGES BEYOND A REASONABLE DOUBT. (Not Raised Below)

6

POINT II

THE TRIAL JUDGE ERRED IN FINDING THE
JUVENILE GUILTY OF THE CHARGES, WITHOUT
LISTING ANY OF THE ELEMENTS OF THE
OFFENSES AND MATCHING THE EVIDENCE TO
THOSE ELEMENTS, OR STATING WHAT IF ANY,
LESSER-INCLUDED         OFFENSES         WERE
CONSIDERED.  (Not Raised Below)

I.

We first address D.R.-J.'s argument that the evidence did not establish delinquency beyond a reasonable doubt and the judge's decision was against the weight of the evidence.  His argument has no merit.  Generally, we will not entertain the argument that an adjudication is against the weight of the evidence unless the defendant moved for a new trial following the decision.  R. 2:10-1. Here, defendant failed to make such a motion.  Consequently, his argument in point one of his brief is procedurally barred.

That said, we will nevertheless, in the interests of justice, address the argument on its merits.  See Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:10-1 (2019); State v. Smith, 262 N.J. Super. 487, 511 (App. Div. 1993). Our task is to "sift through the evidence 'to determine whether any trier of fact could rationally have found beyond a reasonable doubt that the essential

elements of the crime were present.'" Smith, 262 N.J. Super. at 512 (quoting State v. Carter, 91 N.J. 86, 96 (1982)).

Defendant claims the State prosecuted him on a theory of accomplice liability; E.M. had no direct contact with D.R.-J.; and the victim only provided vague statements as to D.R.-J.'s participation in the crime. Consequently, he lacked "the mental state necessary to commit the offense" warranting reversal. State v. Maloney, 216 N.J. 91, 105 (2013) (quoting State v. Whitaker, 200 N.J. 444, 458 (2009)). This argument requires little comment. It is well-established that a trial court's fact-finding should be afforded great deference, especially in matters requiring determination of witness credibility. State v. Locurto, 157 N.J. 463, 474 (1999). The judge's findings on appeal should be sustained, so long as there is substantial proof in the record to support them. Id. at 472. Such substantial proof is present here.

The judge adjudicated D.R.-J. delinquent of first-degree robbery set forth in N.J.S.A. 2C:15-1 as follows:

> a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
>
> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

b. Grading.  Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

The relevant sections of the conspiracy statute, N.J.S.A. 2C:5-2, provide:

a. Definition of conspiracy.  A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

b. Scope of conspiratorial relationship.  If a person guilty of conspiracy, as defined by subsection a. of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of

A-4883-16T3

conspiring with such other person or persons, whether or not he knows their identity, to commit such crime.

c. Conspiracy with multiple objectives. If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship. It shall not be a defense to a charge under this section that one or more of the objectives of the conspiracy was not criminal; provided that one or more of its objectives or the means of promoting or facilitating an objective of the conspiracy is criminal.

d. Overt act. No person may be convicted of conspiracy to commit a crime other than a crime of the first or second degree or distribution or possession with intent to distribute a controlled dangerous substance or controlled substance analog as defined in chapter 35 of this title, unless an overt act in pursuance of such conspiracy is proved to have been done by him or by a person with whom he conspired.

The judge noted that E.M. unwaveringly testified that "the parties that were involved were laying in wait for this to happen and they - - as he identified an individual with dreads as he said, another individual with a tattoo on his face, he was able to testify, identify, and talk about the flashlight and stun gun . . . ." The judge found E.M. "credible" after observing his demeanor, and that his testimony was not "studied or rehearsed." Notably, neither E.B. nor S.R. were called to testify, thereby making E.M.'s testimony all the more critical. There was no doubt in the judge's mind that D.R.-J. "was clearly a participant in this

10

robbery" and that he was aware this situation "was essentially a setup." Lack of a direct conversation between D.R.-J. and E.M. was not "a necessary element of finding culpability" because D.R.-J." was involved[,]" "he was identified[,]" and everything "flows from there." We agree.

No cross-examination called E.M.'s testimony into serious question. By comparison, D.R.-J.'s uncorroborated claim that there was no conspiracy and that he did not possess the mens rea to support an adjudication for robbery strain credibility. The record has ample support for the trial judge's conclusion that D.R.-J. was delinquent.

II.

Next we address D.R.-J.'s argument in point two of his brief that the judge did not match the elements of the offenses to the evidence and whether lesser-included offenses were considered. This argument is also raised for the first time on appeal. This contention has no merit.

The judge aptly found, based upon the totality of the circumstances and evidence, that D.R.-J. participated in the crimes and orchestrated the setup, the ambush, the theft, and the use of weapons to intimidate the victims. A considerable portion of the judge's opinion was devoted to these issues.

11

There was "no doubt" in the judge's mind that D.R.-J. organized the setup here leading to the robbery, the co-conspirators were armed, and the weapons were uncovered. These findings substantiate first-degree robbery, N.J.S.A. 2C:15-1(1) and (2) because force and threats were used by D.R.-J. to put the victims in fear of immediate bodily injury. No proof that D.R.-J. "shared" the mens rea of the co-conspirators was required because the evidence showed he possessed this element himself.

The theft statute provides:

> a. Movable property. A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof.
>
> b. Immovable property. A person is guilty of theft if he unlawfully transfers any interest in immovable property of another with purpose to benefit himself or another not entitled thereto.
>
> [N.J.S.A. 2C:20-3.]

There was no reason for the judge to consider theft because weapons were undeniably involved here. Thus, the judge's conclusion was correct.

To the extent we have not addressed any other issues raised by D.R.-J., we find that same are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4883-16T3