**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4140-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

QUDDIS WIDENER,

     Defendant-Appellant.

_____

          Submitted October 2, 2019 – Decided January 15, 2020

          Before Judges Fasciale and Rothstadt.

          On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-09-2544.

          Joseph E. Krakora, Public Defender, attorney for appellant (Daniel Vincent Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

          Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

          Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Quddis Widener appeals from a April 27, 2018 judgment of conviction and sentence that were entered after a jury found him guilty of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and acquitted him of second-degree weapons charges. The charges arose from defendant's altercation with the victim after defendant mistreated the victim's girlfriend, which resulted in the victim being shot. On appeal, defendant argues that the trial judge erred when he failed to conduct a Wade[1] hearing or instruct the jury with lesser-included offenses, and by improperly denying defendant's motion for an acquittal after finding that the conviction was not against the weight of the evidence. As to his sentence, defendant argues the judge improperly relied on inconsistent facts when sentencing him. For the reasons that follow, we affirm.

I.

We summarize the facts developed at defendant's trial. The events giving rise to defendant's arrest and conviction occurred on July 4, 2016, when the victim, his girlfriend, and the girlfriend's sister, stopped at a neighborhood store where defendant and his friend were inside. While the victim sat in his vehicle, the sister went inside the store, and she was soon followed by the girlfriend.

---

[1] United States v. Wade, 388 U.S. 218, 241-42 (1967).

Once inside the store, defendant, who the sister had seen before, started to verbally abuse the two women by making inappropriate sexual comments. According to the girlfriend, defendant appeared to be intoxicated as he was slurring his words. After asking defendant to stop, the girlfriend left the store and went to the car, where she explained to the victim what had just occurred. A few minutes later, the sister left the store and went to the victim's vehicle's passenger window to make sure her sister was okay. Before she was able to return to the backseat of the car, defendant appeared, leaned into the vehicle's passenger window, and apologized to the victim. Since it was the 4th of July, the victim wanted to get on his way to the barbeque he and the women were supposed to attend, so he told defendant to go ahead as he did not want any issues to arise.

Without explanation, the victim's statement to defendant caused him to begin screaming at the victim. Defendant's friend attempted to get him under control, however, defendant took off his shirt, began to bang on the hood of the victim's car, and walked around to the driver's side of the car in preparation for a fight. When the victim stepped out of his car, defendant swung at him but missed and fell to the ground. After getting up, they then began to fight, with

defendant never landing a blow to the victim. The fight ended after the victim knocked defendant to the ground several times.

After lingering for a short time, defendant left the scene and the victim and his girlfriend took a short walk to a nearby street corner so he could calm down. Defendant suddenly reappeared after five minutes, began screaming at the victim, and, according to the victim and the two women, he reached into his pocket and pulled out a gun.

After seeing the gun, the sister ran into the store and locked herself in the store's bathroom. After hearing three to four gunshots, she called the police. Meanwhile, the victim and his girlfriend started running and eventually stopped in a driveway where they hid behind a van until the police arrived.

Once the police responded, the victim discovered he had been shot in the buttocks. After being treated by an emergency medical technician (EMT), the victim and his girlfriend were transported to the hospital. After leaving the hospital, the two reported to the police station where the victim gave a statement.

Meanwhile, after calling the police, the sister left the store and ran into the street looking for the victim and her sister. After seeing them while the victim was being checked by the EMT, Police Detective Tyrone Grundy

approached the sister, spoke to her, and then took the sister in his car so she could show him where defendant lived.

While outside defendant's house, the sister saw someone walking away from her and Grundy. Once the individual was under the light, she identified the individual as defendant, even though he was wearing a different shirt. To get a better look at the individual, Grundy drove around the block with the sister and when she was closer to the person, she confirmed that the individual was defendant. After Grundy called for backup, defendant was arrested, and Grundy took the sister to the police station where she gave a statement about what happened that night. In their ensuing investigation, the police were never able to locate a weapon associated with the crime.

Later, the police asked the victim to participate in a photo array, conducted by Detective Willy Cox. After looking at several pictures, the victim selected a photograph of defendant that he was confident depicted his assailant. The

girlfriend was never questioned at the police station and was not asked to look at a photo array.[2]

An Essex County Grand Jury returned an indictment, charging defendant with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) ("(b)(1)"), second-degree possession of a weapon, N.J.S.A. 2C: 39-5(b)(1), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C: 39-4(a)(1). Defendant's trial on those charges took place over the course of a week in February 2018. At trial, the victim and the two women testified for the State, as did Cox and another police officer who responded to the scene.

Defendant did not testify but raised an alibi defense in response to the charges. In support of his alibi defense, he presented his girlfriend and his cousin as witnesses. They testified that defendant was at home on the day of the incident, except for the period between 7:00 p.m. to 7:30 p.m., and again until he later left the house at 10:45 p.m. to 11:00 p.m. They also stated that they had no knowledge about defendant having a gun.

In addition to the witnesses' testimony, the parties presented stipulations that they reached before trial. In the stipulations, the parties agreed that

---

[2] The girlfriend later found a picture of defendant on the internet while trying to determine the charges brought against him. The girlfriend, however, never testified at trial to her investigation or seeing the picture.

defendant did not have a permit to own or carry a weapon and that the victim was shot by a handgun on July 4, 2016.

Prior to charging the jury, the trial judge conducted a charge conference to review the proposed instructions. Neither party raised any objections to the charges nor requested any additional instructions as to lesser-included offenses. During deliberations, the jury sent a note to the judge asking for clarification about the aggravated assault instruction. After conferring with counsel, the judge re-read the same charge he gave earlier and provided additional clarification without any objection. The jury resumed its deliberations until it later returned its verdict, convicting defendant of the assault charge.

Defendant filed a motion under Rule 3:18-2 for acquittal notwithstanding the jury's verdict (JNOV), which the judge denied. At his sentencing, the judge considered the statutory aggravating and mitigating factors before imposing a six-year term, subject to a period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2. This appeal followed.

On appeal, defendant presents the following arguments:

POINT I

THE JUDGE COMMITTED PLAIN ERROR IN FAILING TO CHARGE THE LESSER-INCLUDED OFFENSES TO AGGRAVATED ASSAULT WHERE THE EXTENT OF THE VICTIM'S INJURY WAS AT

ISSUE; AND THE JUDGE'S RESPONSE TO A JURY QUESTION WAS INADEQUATE BECAUSE THE QUESTION ALSO REVEALED THE NEED TO INSTRUCT ON LESSER-INCLUDED OFFENSES. (NOT RAISED BELOW).

    A.   BECAUSE THE NATURE OF THE VICTIM'S INJURY WAS UNCLEAR, THE COURT ERRED IN FAILING TO CHARGE THE LESSER-INCLUDED OFFENSES TO AGGRAVATED ASSAULT.

    B.   THE COURT'S ANSWER TO THE JURY'S QUESTION REGARDING THE ASSAULT WAS INADEQUATE, AS THE COURT SHOULD HAVE INSTRUCTED JURORS REGARDING LESSER-INCLUDED OFFENSES WHEN THEY SUGGESTED THAT THEY VIEWED THE ASSAULT AS INVOLVING MERELY A BODILY INJURY WHICH MAY HAVE OCCURRED DURING A FIGHT.

POINT II

IN IMPOSING SENTENCE, THE COURT ERRED WHEN IT CONSIDERED FACTS THAT WERE INCONSISTENT WITH THE JURY'S VERDICT IN ORDER TO SEND A MESSAGE TO THE DEFENDANT AND OTHERS.

In defendant's pro se supplemental brief, he provided these additional points for our consideration:

POINT I

THE CONVICTION IS AGAINST THE WEIGHT OF THE EVIDENCE AND THEREFORE REQUIRES REVERSAL UNDER RULE 3:18-2.

A. THE EVIDENCE ADDUCED AT TRIAL IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT BEYOND A REASONABLE DOUBT AS TO CHARGE OF AGGRAVATED ASSAULT IN THE SECOND DEGREE CAUSING SERIOUS BODILY INJURY.

B. BECAUSE THIS CASE INVOLVED THE IDENTIFICATION PROCESS, A WADE HEARING SHOULD HAVE BEEN HELD TO CHALLENGE THE ENTIRE IDENTIFICATION PROCESS.

POINT II

THE INTERNALLY INCONSISTENT VERDICT IS IMPERMISSIBLE AS IT WAS CAUSED BY THIS COURT'S INCOMPLETE INSTRUCTION TO THE JURY.

POINT III

IN THE ALTERNATIVE, THIS COURT SHOULD GRANT A NEW TRIAL PER RULE 3:20-1.

We are not persuaded by any of defendant's arguments.

II.

A.

We first consider defendant's contention that based upon a lack of medical evidence as to the extent of the victim's injury, the trial judge should have sua

9

sponte instructed the jury about lesser-included offenses. During the judge's charge, after reading the first count of the indictment charging second-degree aggravated assault under (b)(1), and reading that section of the statute, the judge read the Model Jury Charge associated with aggravated assault. See Model Jury Charges (Criminal), "Aggravated Assault – Serious Bodily Injury (N.J.S.A. 2C:12-1(b)(1))" (rev. Jan. 9, 2012).

On appeal, defendant argues that the judge's failure to have instructed jurors to consider lesser-included offenses under N.J.S.A. 2C:12-1[3] "deprived [him] of due process and the right to jury trial." He argues that the charges on the lesser-included offenses were warranted because the victim did not immediately know he was shot, and there was no evidence provided by the State about the extent of the victim's injuries. Defendant also states his intoxication may have made him "unable to accurately aim the weapon at an intended target,"

---

[3] Specifically, defendant argues the jury should have been allowed to consider third-degree aggravated assault under N.J.S.A. 2C:12-1(b)(2) (addressing "bodily injury with a deadly weapon" (emphasis added)); third-degree aggravated assault under N.J.S.A. 2C:12-1(b)(7) (addressing attempts to cause "significant bodily injury" (emphasis added)); fourth-degree assault under N.J.S.A. 2C:12-l(b)(3) (addressing "[r]ecklessly caus[ing] bodily injury to another with a deadly weapon" (emphasis added)); and simple assault under N.J.S.A. 2C:12-1(a) (addressing "[a]ttempts to cause . . . bodily injury," "[n]egligently caus[ing] bodily injury to another with a deadly weapon," and "[a]ttempts by physical menace to put another in fear of imminent serious bodily injury" (emphasis added)).

and that it is unclear whether he intentionally shot the victim or meant to cause a serious bodily injury. We disagree.

At the outset, we observe that "[w]hen a defendant fails to object to an error or omission [about a jury charge] at trial, we review for plain error. Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Reversal is warranted only where an error raises "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "The mere possibility of an unjust result is not enough." Ibid. In our review of a trial judge's instructions, if a defendant does not object to an instruction at trial, we presume "that the instructions were adequate." State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010) (quoting State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003)).

In its jury charges, a "trial [judge] must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Accordingly, "the [judg]e has an 'independent duty . . . to ensure that the jurors

receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).

"[I]f the parties do not request a lesser-included offense charge, reviewing courts 'apply a higher standard, requiring the unrequested charge to be "clearly indicated" from the record.'" State v. Fowler, 239 N.J. 171, 188 (2019) (quoting State v. Alexander, 233 N.J. 132, 143 (2018)). Further, there must be a rational basis "to acquit defendant of the greater [-included] offense," before a court is required to deliver the lesser charge. N.J.S.A. 2C:1-8(e); see also State v. Denofa, 187 N.J. 24, 41-42 (2006). As such,

> [t]he "clearly indicated" standard does not require trial [judges] either to "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty," or "'to meticulously sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain' a lesser charge." Instead, the evidence supporting a lesser-included charge must "jump[] off the page" to trigger a trial [judge's] duty to sua sponte instruct a jury on that charge.
>
> [Alexander, 233 N.J. at 143 (second and third alterations in original) (citations omitted).]

Here, we conclude that the evidence did not clearly indicate that the lesser-included offenses should have been charged. The indictment charged defendant under (b)(1) with "[a]ttempt[ing] to cause serious bodily injury to another, or caus[ing] injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly caus[ing] such injury." The parties stipulated that the victim was shot by a handgun. Witnesses testified about defendant firing a weapon numerous times at the victim.

The fact that the victim did not suffer a more serious injury than being shot in the buttocks "did not warrant the judge charging sua sponte any of the unrequested suggested lesser-included offenses." State v. Mingo, 263 N.J. Super. 296, 305 (App. Div. 1992) (D'Annunzio, J. dissenting), rev'd on dissent, 132 N.J. 75 (1993). An attempt under (b)(1) does not "require[] that defendant actually cause injury." Ibid. "Thus, defendant was guilty of the [(b)(1)] offense if he had attempted to cause serious bodily injury, even if his purposeful or knowing behavior resulted in only bodily injury." Ibid.

We are not persuaded to the contrary by defendant's reliance upon the holding in State v. Sloane, 111 N.J. 293 (1988). Unlike defendant, the defendant in Sloane specifically asked for a charge on lesser-included offenses where he had repeatedly stabbed his victim, and the question of the defendant's

responsibility turned on the extent of the injury.  See id. at. 298-300.  Here, the

State's evidence did not support a claim that defendant caused a serious bodily

injury, but rather that by shooting at the victim numerous times, defendant

attempted to cause such injury.  Defendant's reliance on Sloane is inapposite.

Even if we were to conclude the judge erred by not including instructions

on lesser offenses, the omission was not plain error.  The Court has said that:

> In the context of a jury charge, plain error requires demonstration of "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."
>
> [State v. Burns, 192 N.J. 312, 341 (2007) (second alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).].

The allegation of error must be assessed in light of "the totality of the

entire charge, not in isolation."  State v. Chapland, 187 N.J. 275, 289 (2006)

(citing State v. DiFrisco, 137 N.J. 434, 491 (1994)).  Here, the jury was free to

find that defendant did not cause any serious bodily injury and did not attempt

to do so, if the State failed to prove either.  In light of the fact that there was no

evidence about the seriousness of the victim's injuries, the jury followed the trial

judge's charge about attempting to cause serious bodily injury and found that the

14

State proved beyond a reasonable doubt that defendant was guilty under (b)(1) of an attempt. Under the totality of the circumstances, we discern no plain error in the judge omitting charges on the lesser-included offenses of aggravated assault.

B.

We are not persuaded to the contrary by defendant's argument that the jury's note somehow triggered an obligation to charge the unrequested lesser-included offenses. The note stated the following: "We would like to clarify aggravated assault – causing bodily injury – attempting to cause bodily injury. The charge states aggravated assault serious bodily injury. If this was an attempt (say fight) does this qualify for aggravated assault? The document does not clarify this well enough for us." (Emphasis added). During the judge's conference about the note with counsel, the prosecutor stated he believed the note related to the jury "trying to figure out how . . . attempting falls into . . . agg[ravated] assault." Defendant's attorney agreed that re-reading the jury charge was the only way to respond, but he mentioned "we don't know if they're thinking is a fight enough for a serious bodily injury."

A-4140-17T4

After considering counsels' comments, the judge re-read the original charge and further reinstructed the jury, without any objection by defendant, as follows:

> All right, so with aggravated assault here, it's serious bodily injury, sort of a two branch statute, all right. So you have causing serious bodily injury or attempting to cause serious bodily injury, but on the causing serious bodily injury branch of it you need -- you need a finding of serious bodily injury, that's the first element, right, that I read to you, but you also have to find that the defendant acted purposely or knowingly or acted recklessly under circumstances manifesting extreme difference to the value of human life. That's causing serious bodily injury, that branch.
>
> The other branch of it is attempting to cause serious bodily injury where, as I just read to you, there you have to find beyond a reasonable doubt that . . . defendant purposely attempted to cause serious bodily injury to [the victim]. It does not matter whether such injury actually resulted, all right. So, that's the difference there.
>
> [(Emphasis added).]

As noted, on appeal, defendant contends that the note revealed the jury "viewed the assault as involving merely a bodily injury which may have occurred during a fight." He argues that the judge's response to the jury was inadequate as the judge should have given a tailored instruction that would have

16

clarified whether the assault could have been based on the fight alone. We find no merit to defendant's contentions.

We conclude that the trial judge's response to the jury's note properly addressed and clarified the issue raised by the jury. "'[W]hen a jury requests a clarification,' the trial [judge] 'is obligated to clear the confusion.'" State v. Savage, 172 N.J. 374, 394 (2002) (quoting State v. Conway, 193 N.J. Super. 133, 157 (App. Div. 1984)). When a "note [is] ambiguous . . . the trial judge should not . . . assume[] the meaning of the jury's questions, but [instead] should . . . instruct[] the jury to clarify those questions," State v. Whittaker, 326 N.J. Super 252, 262-63 (1999), "so that the actual concern of the jury may be appropriately addressed." Pressler & Verniero, Current N.J. Court Rules, cmt. 7 on R. 1:8-7 (2020). The trial judge must answer questions "clearly and accurately and in a manner designed to clear its confusion, which ordinarily requires explanation beyond rereading the original charge. The court's failure to do so may require reversal." Ibid.

Here, the trial judge properly recognized that the jury's question related to an attempt to cause serious bodily injury as provided under (b)(1). The note itself acknowledged that the jury understood they were asked in the charge to determine whether there was an attempt to cause serious bodily injury, and its

17

question was focused on what circumstances supported a finding of an attempt. The judge's explanation properly addressed that issue. The judge evidently provided the explanation the jury was looking for as demonstrated by the lack of any further questions before the jury returned its verdict.

We reject defendant's contention that the focus of the note was about the fight that preceded the shooting. There was clearly no evidence in the record, nor did the State ever argue, that defendant attempted to cause serious bodily injury to the victim when he swung at but missed defendant or when they subsequently struggled for a few moments before the fight ended. Contrary to defendant's contentions, that insignificant "attempt," which did not and could not have caused any bodily injury,[4] did not satisfy the requirements of any of

---

[4] N.J.S.A. 2C:11-1 defines the various injuries required for a finding of assault. It states in pertinent part:

> a. "Bodily injury" means physical pain, illness or any impairment of physical condition;
>
> b. "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ;
>
> . . . .

A-4140-17T4

the lesser-included offenses he argues should have been charged. Here again we find no error.

## III.

We turn next to defendant's contention that the evidence adduced at trial was insufficient to sustain a conviction under (b)(1). Essentially, defendant again argues that the lack of evidence about the extent of the victim's actual injury should have resulted in an acquittal. For that reason, defendant argues his Rule 3:18-2 motion for acquittal JNOV should have been granted. We disagree.

In our review of a denial of a motion filed under Rule 3:18-2, we apply the same standard as the trial judge. State v. Tindell, 417 N.J. Super. 530, 549 (App. Div. 2011) (citing State v. Moffa, 42 N.J. 258, 263 (1964)). We consider

> whether the evidence viewed in its entirety, and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom, is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged.
>
> [Ibid. (quoting State v. D.A., 191 N.J. 158, 163 (2007)).]

___

d. "Significant bodily injury" means bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses.

19

Applying that standard, we conclude that the trial judge properly denied defendant's motion as there was sufficient evidence that defendant committed a (b)(1) aggravated assault by shooting at the victim multiple times, as testified to by the victim, his girlfriend, and her sister. We find defendant's arguments to the contrary to be without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

## IV.

We turn our attention next to defendant's argument that his conviction cannot be sustained because it was inconsistent with his acquittal on the weapons possession charges. According to defendant, if the jury found he did not possess a weapon, it could not have also found that he attempted to cause serious bodily injury to the victim by shooting at him. We disagree.

Contrary to defendant's argument, and as held by the Supreme Court, inconsistent verdicts are acceptable. As the Court explained in State v. Muhammad, 182 N.J. 551, 578 (2005):

> Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. Our jurisprudence does not allow us to conjecture regarding the nature of the deliberations in the jury room. In reviewing a jury finding, we do not attempt to reconcile the counts on which the jury returned a verdict of guilty and not guilty. Instead, we determine whether the evidence in the record was

20

sufficient to support a conviction on any count on which the jury found the defendant guilty. We do not speculate whether verdicts resulted from jury lenity, mistake, or compromise.

[(Citations omitted).]

As we have already observed, here, there was sufficient evidence for the jury to rely upon in finding defendant guilty of the (b)(1) aggravated assault. We have no cause to speculate as to why the jury acquitted defendant on the other charges.

V.

Next, we address defendant's contention that the trial judge should have conducted a <u>Wade</u> hearing about the victim's and his girlfriend's identification of defendant because the victim did not identify him and the girlfriend's out-of-court identification was inadmissible.

We conclude defendant's argument is without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2). Suffice it to say, his contentions are belied by the record as the victim did identify defendant through a photo array, about which there was no evidence that the procedure used was "the product of suggestive or coercive interview techniques," <u>State v. Michaels</u>, 136 N.J. 299, 320 (1994) (quoting <u>Watkins v. Sowders</u>, 449 U.S. 341, 350 (1981)); <u>see</u> <u>State v. Henderson</u>, 208 N.J. 208, 218 (2011), <u>modified by</u> <u>State v.</u>

<u>Anthony</u>, 237 N.J. 213, 233-34 (2019); <u>see also</u> <u>State v. Pressley</u>, 232 N.J. 587, 596-97 (2018), and defendant's girlfriend never testified at trial about her out-of-court identification of defendant using the internet.

## VI.

Having determined that defendant's challenges to his conviction were without merit, we now address his contentions about his sentence. At defendant's sentencing, the trial judge considered the statutory criteria for imposing sentences and found aggravating factors three, six, and nine [5] applicable given that defendant was previously convicted for an unlawful possession of a weapon within the last four years. He also found mitigating factor eleven[6] applicable, as defendant provided financial support to his three children, which "would entail [an] excessive hardship" to defendant and his children if he were incarcerated. The judge then found that the aggravating factors outweighed the mitigating factor and sentenced defendant to six years

---

[5] <u>See</u> N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"); (6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"); and (9) ("[t]he need for deterring the defendant and others from violating the law").

[6] <u>See</u> N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents").

subject to a period of parole ineligibility under the No Early Release Act under N.J.S.A. 2C:43-7.2.

On appeal, defendant argues that the judge "imposed a sentence that was inconsistent with the verdict." He contends that it was wrong for the judge to rely on the victim being shot when sentencing defendant because he was acquitted of the weapons charges. He also argues that he was prejudiced when the judge imposed a sentence to "send a message to [him] and others." In support of his contentions, defendant relies upon our holding in Tindell where a trial judge imposed a maximum sentence against the defendant after he allowed his personal views to cloud his judgment by making disparaging comments about defendant, the jurors, and witnesses at sentencing. Tindell, 417 N.J. Super. at 572. We find no merit to these contentions.

We review a sentence imposed by the trial judge under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221,

228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Applying this standard, we discern no abuse in the trial judge's discretion nor did the sentence he imposed shock our judicial conscience. The judge imposed a sentence in the lower range for a second-degree crime. The judge's reliance upon the evidence in the record about defendant committing a (b)(1) offense was permissible even though the jury acquitted defendant of the weapons charges. Moreover, the judge properly considered and applied aggravating factor nine as a legitimate consideration under the statute. We have no cause to disturb defendant's sentence.

## VII.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4140-17T4